Christopher Sproul (State Bar No. 126398)
csproul@enviroadvocates.com
Brian Orion (State Bar No. 239460)
borion@enviroadvocates.com
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695

Matthew Maclear (State Bar No. 209228)
mcm@atalawgroup.com
ATA Law Group
4030 Martin Luther King, Jr. Way
Oakland, CA 94609
Telephone: (415) 568-5200

Attorneys for Plaintiffs
ECOLOGICAL RIGHTS FOUNDATION and
SANTA BARBARA CHANNELKEEPER

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>HOT LINE CONSTRUCTION, INC., et al.,<br><br>      Defendants.<br><br>            Defendants. | Case No. 5:20-cv-01108-AB-KK<br><br>**DECLARATION OF CHRISTOPHER SPROUL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br><u>Date/Time</u>:  February 16, 2024, 10:00am<br><u>Location</u>: Courtroom 7B, Los Angeles, California<br><u>Judge</u>: Hon. District Judge Andre Birotte |

Pursuant to 28 U.S.C § 1746, I, Christopher Sproul, hereby declare under penalty of perjury under the laws of the United States of America that the following facts are true and correct:

1.      The facts set forth in this declaration are based on my personal knowledge; if called to testify as a witness, I could and would competently testify thereto under oath. As to those matters that reflect a personal opinion, they reflect my personal opinion and judgment upon the matter.

2.      I am more than eighteen years old, am competent to testify, and have personal knowledge of the matters stated in this declaration.

3.      I am an attorney licensed to practice law in the State of California. I am the senior lawyer in Environmental Advocates, a public interest law firm, and I am counsel for Plaintiffs Ecological Rights Foundation and Santa Barbara Channelkeeper (collectively, "EcoRights") in this matter.

4.      I make this declaration in support of Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs ("Motion") pursuant to 33 U.S.C. § 1365(d).

## I.      Christopher Sproul Biographical Information

5.      I earned my Juris Doctorate from the University of California, Berkeley in June 1986 and a Master of Arts degree in political science from the University of California, Santa Barbara in August 1982.

6.      I have been a member of the California Bar since December 1986. I have also been a member of the bar of the United States District Court for the Central District of California since 1986, and I am a member of several other federal bars, including the bars for the U.S. Supreme Court, U.S. Court of Appeals for the Ninth Circuit, U.S. Court of Appeals for the District of Columbia Circuit, the U.S. District Court for the Northern District of California, the U.S. District Court for the Eastern District of California, the U.S. District Court for the

Southern District of California, the U.S. District Court for the District of Columbia, and the U.S. District Court for the District of Hawaii.

7.     I have directed or co-directed Environmental Advocates for 22 years. I have exclusively represented tribal governments, non-profit environmental organizations, and individuals seeking to advance environmental protection through judicial litigation and administrative advocacy under the major environmental laws, including the Clean Water Act ("CWA"), Endangered Species Act ("ESA"), Clean Air Act ("CAA"), Resource Conservation and Recovery Act ("RCRA"), National Environmental Policy Act ("NEPA"), the Coastal Zone Management Act ("CZMA"), the California Environmental Quality Act ("CEQA") and other state and federal laws, including the Administrative Procedure Act ("APA"), California Code of Civil Procedure sections 1094.5 and 1085, the Freedom of Information Act ("FOIA"), and the California Public Records Act ("PRA"). I have brought these citizen suits against various federal agencies, state agencies, businesses, and municipalities.

8.     I currently am lead counsel or co-lead counsel in several cases in active litigation and additional cases involving consent decree compliance monitoring. I have also provided advice to several environmental organization clients concerning the potential for several other citizen suit enforcement actions for violations of various environmental laws. I have also presented public hearing testimony and drafted written comments to government agencies concerning various environmental regulatory decisions. I served as lead counsel in this case and closely directed the legal team to ensure timely and efficient production of winning argument, assigning tasks to avoid duplication, and frequently delegating tasks to junior attorneys billing at lower rates. Attached hereto as Exhibit 3 is a true and correct copy of my chronological time records that document the time that I spent on this case. I personally and contemporaneously kept these records using computer timekeeping software and amended them for clarity documenting

1    the hours I worked on this case for which I am seeking to recover an attorney's

2    fee award.

3         9.     The cases I have brought and continue to bring on behalf of my clients

4    are typically "impact litigation," *i.e.*, cases designed to have significant effect on

5    environmental law and policy and significantly advance environmental protection.

6    Numerous of these actions have resulted in court orders or judicial consent

7    decrees imposing far-reaching injunctive relief for environmental remediation

8    and/or remedies addressing agency responsibilities under the environmental laws.

9    Cases where I have served as lead counsel or as co-lead counsel have had a

10   significant impact on environmental law, as they have resulted in over 80

11   decisions published in the Federal Reporter, Federal Supplement, LEXIS, and/or

12   Westlaw. That many of these cases have established important precedent in

13   environmental law is further reflected in the numerous subsequent citations by

14   other decisions to the cases where I served as counsel. A partial bibliography of

15   these cases is set forth as Exhibit 12 to this declaration. Many of these cases have

16   involved issues or concerns of widespread public interest and that have

17   accordingly attracted extensive media coverage in newspapers, radio, television,

18   and/or environmental periodicals or blogs and social media commentary. I have

19   also brought actions against federal agencies under the APA and writ of mandate

20   actions against state agencies challenging agency actions or inaction.

21        10.    For over the past 20 years, my colleague Fredric Evenson and I have

22   worked on numerous cases like this one involving the human health and

23   environmental risks associated with chlorophenolic wood treatment chemicals and

24   the associated chemicals polychlorinated dibenzo-p-dioxins and polychlorinated

25   dibenzofurans ("Dioxins"). Along with Mr. Evenson, I served as counsel on the

26   following such cases:

27   • *Humboldt Baykeeper v. Simpson Timber Co.*, 2006 U.S. Dist. LEXIS 91667

28     (N.D. Cal. December 8, 2006) (Case No. C 06-04188 CRB). Represented

plaintiff in CWA and RCRA citizens' suit. Resulted in settlement requiring characterization and cleanup of Dioxin contamination at former mill, construction of storm water bioswale, installation of groundwater monitoring wells, and Supplemental Environmental Project funding.

- *Ecological Rights Found. v. Sierra Pacific Industries*, (N.D. Cal 2001) (Case No. C01-0520 MEJ). Represented plaintiff in CWA and RCRA citizens' suit brought to remedy Dioxin discharges to Humboldt Bay. Plaintiff prevailed on Motion for Summary Judgment establishing thousands of CWA violations. The matter settled by consent decree requiring site pollution characterization, soil and groundwater cleanup, abatement of non-storm water discharges, storm water sampling, an off-site ecological and human health risk assessment, and Supplemental Environmental Project funding.

- *Ecological Rights Found. v. Union Pacific*, (N.D. Cal. 2006) (Case No. C 06-02560 JSW). Represented Plaintiff in CWA and RCRA citizens' suit brought to remedy polluted discharges from former railroad maintenance facility. The matter settled by consent decree requiring removal of contaminants and storm water best management practices.

- *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 2013 U.S. Dist. LEXIS 42179 (N.D. Cal. March 1, 2013) (Case No. C 10-0121 RS): Represented Plaintiff in RCRA case regarding Dioxin discharges from utility pole storage areas to Humboldt Bay, San Francisco Bay and other waterbodies.

- *Ecological Rights Found. v. Schmidbauer Lumber Co.*, (N.D. Cal. 2016) (Case No. 1:16-cv-07401-HSG): Represented Plaintiff in citizens' suit brought to remedy Dioxin discharges to Humboldt Bay from lumber mill. The case resulted in a consent decree requiring Dioxin pollution control measures including stormwater pollution best management practices.

Through my work on these cases, Mr. Evenson and I gained substantial knowledge and expertise in developing these Dioxins cases. This includes

expertise in a variety of technical issues involving Dioxins relevant to developing the factual record and expert testimony needed to prevail in this case, as well as substantial expertise relevant to assessing and developing remediation plans to address Dioxins contamination. I believe the knowledge and experience gained from litigating these numerous prior Dioxin cases made myself and Mr. Evenson particularly well-suited to litigating this case and contributed to us being able to effectively and efficiently litigate the case to its successful conclusion.

11.    Prior to joining Environmental Advocates, I served as an Assistant Regional Counsel for the U.S. Environmental Protection Agency ("EPA") from 1987 until 2002. During my 15-year tenure at EPA, my primary concentration was representing EPA in judicial and administrative enforcement actions brought under the environmental statutes administered by EPA. The majority of these actions were brought under the CWA, but I also worked on EPA enforcement actions brought under RCRA, the CAA, the Safe Drinking Water Act, and the Marine Protection Research and Sanctuaries Act ("MPRSA"). I also worked on several permitting matters, including litigation challenges to EPA CWA NPDES permit decisions; assisted in EPA reviews of state environmental programs; counseled EPA staff in responding to FOIA requests; participated in work groups tasked with drafting EPA regulations and proposed amendments to the CWA; and provided client counseling to numerous EPA regulatory officials concerning compliance with the CWA, the ESA, the CZMA, the MPRSA, and the APA.

12.    From 1997 to 1998, through an intergovernmental personnel agreement between EPA and the State of Hawaii, I worked for the Hawaii Attorney General as a staff attorney. In this role, I represented the Hawaii Department of Health in several water pollution enforcement actions under the Hawaii equivalent of the federal CWA, provided advice to the Department of Health concerning many regulatory matters, and provided advice to the Hawaii State Legislature concerning environmental legislation related to water pollution.

13.    From 2004 to 2010, I was an Adjunct Professor at Golden Gate University School of Law in San Francisco where I taught a course on environmental litigation.

14.    I also served as a law clerk to U.S. District Court Judge William J. Rea, in the U.S. District Court for the Central District of California in 1986 and 1987.

15.    Attached hereto as Exhibit 10 is a true and correct copy of a declaration submitted by Daniel Cooper in connection with a motion for attorneys' fees and costs that my firm filed on December 6, 2023 in another environmental citizen suit case in which I am involved (captioned *Inland Empire Waterkeeper et al. v. Corona Clay Co.*, Case No. 8:18-cv-00333 DOC (DFM) (C.D. Cal.)). In paragraph 13 of this declaration, Mr. Cooper attests to his 27-year working relationship with me and his opinion that I am "one of the most effective environmental litigators in the western United States," that I "have extensive knowledge of commercial and judicially-awarded fee rates in the Central District of California," and that I am a "member of the relevant legal community applicable to this case and . . . qualified to opine on the reasonableness of attorneys' fee rates." Of note, the case in which this declaration was filed was also in the same relevant legal community as this case, the Los Angeles/Orange County area legal market.

16.    Attached hereto as Exhibit 11 is a true and correct copy of a declaration submitted by Drevet Hunt in connection with the same attorneys' fees motion referenced with respect to the Daniel Cooper declaration in the paragraph above. In paragraph 14, Mr. Hunt attests that, based on his roughly 17-year working relationship with me, he knows me to be a "a highly skilled litigator" with "a reputation for environmental citizen suit expertise . . . ."

17.    Over the course of my years practicing law, I have filed several motions for attorneys' fees and costs in public-interest environmental litigation as

well as mediation briefs in fee negotiation matters. I have also written declarations in support of attorney fee motions filed by other attorneys in cases in which I was not counsel of record myself. As the managing attorney at Environmental Advocates, I am also in charge of setting attorney fee hourly rates for myself and for the more junior attorneys in the firm and have done so for years in numerous state and federal courts. In carrying out these tasks, I have performed extensive reviews of fee awards in cases involving a wide variety of complex civil litigation in the U.S. District Court for the Central District of California as well as other market data.

## II.    Tasks Performed and Hours Incurred in this Case

18.    Plaintiffs brought this action against Hot Line to remedy pollution from highly toxic contaminants from Hot Line's storage of treated wooden utility poles ("Poles") and treated wood waste ("TWW") generated by disposal of used Poles and utility pole crossarms at the Facility. The Poles and TWW are treated with the wood preservative pentachlorophenol, which contains several other chemicals, including polychlorinated dibenzo-p-dioxins and polychlorinated dibenzofurans ("dioxins"). Dioxins are persistent organic pollutants that, at extremely low levels, cause cancer, reproductive and developmental harm, and interfere with the endocrine system. Dioxins are one of the hazardous chemical components of Agent Orange, the infamous defoliant used by the U.S. military in Vietnam.

19.    Plaintiffs were particularly concerned about preventing the ongoing migration of these contaminants into nearby Goleta Slough, a rare and sensitive Southern California estuary. Plaintiffs engaged in substantial initial case development work and investigation to develop the factual and legal theories of the case and incorporated this information into the required 60-day notice letter and complaint. Plaintiffs' pre-suit sampling at the Facility in May 2019 had

indicated that the soil at the Facility was highly contaminated with dioxins. The levels of these dioxins exceeded applicable regulatory agency ecological and human health screening values for dioxin by as much as approximately 450,000 thousand times. Moreover, Plaintiffs sampling in December 2019 confirmed that the pollutants onsite were being picked up in storm water and flushed into the storm sewer adjacent to the Facility. To remedy these problems, Plaintiffs filed the case with the goal of requiring Hot Line to conduct a complete site assessment of the Facility sufficient to adequately delineate the lateral and vertical extent of the contamination and thereafter to remediate the Facility to a level sufficient to protect human health and the environment.

20.    In pursuit of this objective, Plaintiffs engaged in numerous types of tasks throughout this case. I summarize the major tasks in the following sections, grouped as follows: (1) fact discovery; (2) expert discovery; (3) trial preparation; and (4) pursuing settlement.

### a. Fact Discovery:

21.    Plaintiffs engaged in significant factual discovery work in the case. This section summarizes the major tasks that Plaintiffs undertook on factual discovery, as follows: (1) site inspections and sampling; (2) depositions; (3) written discovery; and (4) handling discovery disputes and motions to compel.

### i. Site Inspections and Sampling:

22.    In this case, the existence of contamination at the Facility and its fate and transport offsite were the key facts needed to establish Plaintiffs' claim that the Facility may be presenting an imminent and substantial endangerment to health or the environment. Therefore, Plaintiffs undertook significant efforts to conduct sampling at the Facility and in relevant offsite locations. Specifically, Plaintiffs conducted 10 separate sampling trips to gather evidence of the

contamination at the Facility and the impact of the contamination running off of the Facility into the local environment.

23. To prepare for and engage in this sampling activity, Plaintiffs undertook various tasks to: (1) serve Hot Line with notice of the site inspection and sampling, initially by preparing a Rule 34 request for land inspection (when Hot Line still occupied the Facility), and later via notices to Hot Line and subpoenas to the City of Santa Barbara (which owns the land); (2) plan for the sampling, including by selecting the desired locations of sampling; (3) prepare a Sampling and Analysis Plan to set forth the protocols for the sampling activities; (4) hold a coordination call with the samplers to review the Sampling and Analysis Plan and discuss the sampling locations, protocols, and sampling equipment needed; (5) engage in follow up activities after the sampling, including gathering photos and videos from the sampling; (6) review laboratory sampling results when obtained from the laboratory and incorporating relevant facts into Plaintiffs' factual summaries for use in the case; (7) prepare document productions to Hot Line containing photos, videos, and sampling laboratory reports from the sampling; (8) sharing the sampling results, photos and videos with Plaintiffs' expert Dr. William Rogers, and discussing them with Dr. Rogers, for the purposes of informing his opinions concerning the environmental contamination at the Facility and whether it may result in an imminent and substantial endangerment to health or the environment as alleged in Plaintiffs' RCRA claim; and (9) work with Dr. Rogers to prepare supplemental expert reports addressing the new sampling results over time.

24. During these sampling trips, Plaintiffs collected a total of 27 samples, including 24 samples of soils or storm water at the Facility, plus three samples of soil in an offsite location known as Firestone Ditch, where storm water from the Facility runs on its way to Goleta Slough. This sampling was necessary to establish numerous components of Plaintiffs' case under RCRA, namely, to

establish: (1) that the Poles and TWW leached contaminants at the Facility; (2) that contamination from the Poles and TWW was widely distributed throughout the Facility, and the levels of such contamination; (3) that contaminants at the Facility are picked up in storm water runoff and carried offsite in storm water, and the levels of such contamination in storm water; and (4) that the storm water carries contamination via the underground storm sewer lines to Firestone Ditch, the first point where the underground lines discharge onto an accessible surface swale that could be sampled, and that is located a short distance to Goleta Slough.

25.    When this case was filed in May 2020, Hot Line stored large racks of Poles around the perimeter of the Facility, with TWW bins stored in the center of the Facility. During this initial phase of the litigation, Plaintiffs conducted three sampling events to establish that the Poles and TWW were discharging contaminants, to characterize the soil contamination at the Facility, and to establish that storm water runoff was carrying contaminants offsite:

- May 15, 2019 (two samples of soil)
- December 4, 2019 (one sample of storm water)
- March 11, 2020 (two samples of soil)

26.    After this sampling occurred, in late 2020, Hot Line vacated the Facility and removed all Poles and TWW bins from the Facility. Hot Line also conducted a limited site remediation in the fall of 2021 which it contended had left the site free of dioxins and pentachlorophenol contamination. Following Hot Line's ceasing operations at the Facility and engaging in a partial site cleanup, Plaintiffs returned to conduct further sampling to investigate and as appropriate develop rebuttal evidence that Hot Line's limited site remediation had failed in removing all contamination and that storm water runoff from the Facility was still carrying contamination that was being leached from the soil and legacy TWW wood chips remaining at the Facility. Plaintiffs also returned to conduct sampling to more fully characterize the legacy contamination left throughout the Facility

1    and to establish the ongoing presence of TWW wood chips. Thus, Plaintiffs

2    returned to conduct the following sampling:

3        • January 27, 2021 (two samples of soil)

4        • January 28, 2021 (one sample of storm water)

5        • March 25, 2022 (six samples of soil)

6        • April 28, 2022 (four samples of soil)

7        27.    After Plaintiffs completed this sampling, Hot Line engaged in yet

8    another partial remediation of the Facility in late August and early September

9    2022. During this remediation, Hot Line removed the top portion of soil in a strip

10   around the perimeter of the Facility where the Poles were previously stored, and

11   in the middle of the Facility where the TWW bins were previously stored.

12   Thereafter, Plaintiffs returned to engage in further sampling to develop what they

13   thought the evidence would likely show, that the Facility was still contaminated

14   notwithstanding this partial remediation and that storm water runoff from the

15   Facility was still carrying material levels of pollutants offsite from the legacy

16   contamination and TWW wood chips at the Facility. Plaintiffs also returned to

17   establish that Hot Line's consultant, Environmental Engineering, Consulting and

18   Remediation, Inc. ("E2C Remediation"), failed to comply with its remediation

19   plan by failing to remove all wood chips from the Facility:

20       • December 27, 2022 (two samples of storm water)

21       • April 24, 2023 (four samples of soil)

22       28.    The six Plaintiffs' sampling trips referred to in paragraphs 26 and 27

23   established crucial evidence to support Plaintiffs' central contention in this case:

24   that Hot Line's limited site cleanup activity had failed to protect the environment

25   and had instead left substantial levels of dioxins and pentachlorophenol at the

26   Facility in a fashion that was continuing to cause.

27       29.    In addition, in the pretrial phase of the case, Hot Line claimed that

28   Plaintiffs lacked evidence of the discharge from the Facility reaching the

receiving waters in Goleta Slough. Moreover, in a June 2023 supplemental expert report from Mr. Goalwin, Mr. Goalwin claimed that the Facility site was cleaned up in a fashion that no longer presented risk of harm to off-site locations. To rebut these contentions, Plaintiffs conducted sampling in Firestone Ditch, an earthen swale/wetland feature that is a tributary pathway by which storm water runoff from the Facility reaches Goleta Slough. On August 22, 2023, Plaintiffs took three samples of soil at the point where the storm water pipe leading away from the Facility discharges into Firestone Ditch on its way to Goleta Slough. These samples showed extremely high levels of dioxin well above regulatory agency guidance levels used to design cleanup activity.

30.    In addition to Plaintiffs, third party consultants retained by Hot Line and the City of Santa Barbara also conducted extensive sampling of the Facility. These consultants conducted six sampling trips during which they took an additional 48 samples, as follows:

- Mar. 11, 2020 (two samples of soil taken on behalf of Hot Line by its retained consultant Sespe Consulting)

- October 29, 2020 (22 samples of soil taken by Hot Line's consultant E2C Remediation)

- August 27, 2021 (four samples of soil taken by Hot Line's consultant E2C Remediation)

- October 19, 2021 (five samples of soil taken by Hot Line's consultant E2C Remediation)

- July 19, 2023 (10 samples of soil taken by City of Santa Barbara's consultant Rincon Consultants, Inc.)

- August 24, 2023 (five samples of soil taken by Hot Line's consultant E2C Remediation)

31.    These third party sampling activities required Plaintiffs to engage in various tasks, including: (1) to attend these site visits whenever possible to

observe these sampling activities, including by noting where the sampling was conducted; (2) to propound requests for production and subpoenas to seek production of the photos, videos, and laboratory sampling results from these sampling events, and to seek to depose some of the third party samplers when the facts surrounding their sampling (such as sampling locations, sampling depths below soil, and other facts) were not well documented by field notes and photos; (3) to review the photos, videos, and laboratory sampling results and incorporate relevant facts into Plaintiffs' factual summaries for use in the case; (4) to share the sampling results, photos and videos with Plaintiffs' expert Dr. William Rogers, and discussing them with Dr. Rogers, for the purposes of informing his opinions concerning the environmental contamination at the Facility and whether it may result in an imminent and substantial endangerment to health or the environment as alleged in Plaintiffs' RCRA claim; and (5) to work with Dr. Rogers to prepare supplemental expert reports addressing the new sampling results over time.

32.    All told, these sampling efforts were extensive, totaling 75 samples in all: 27 samples by Plaintiffs; 38 samples by Hot Line; and 10 samples by the City of Santa Barbara. Plaintiffs necessarily expended significant time and effort in connection with this sampling as outlined above.

33.    In the end, these sampling efforts were highly successful and proved crucial to Plaintiffs' success in the case. The sampling conducted over time established the key facts necessary for Plaintiffs to prevail, including that: (1) the Poles and TWW leached high quantities of highly toxic contaminants onto the ground at the Facility; (2) that these contaminants contaminated the soil and entered storm water runoff from the Facility; (3) that, notwithstanding Hot Line's vacating of the Facility and partial remediation, the Facility remained highly contaminated and continued to discharge substantial quantities of contaminants in storm water; and (4) that such storm water reached Goleta Slough via the

Firestone Ditch. This sampling evidence was the core evidence Plaintiffs used to support the case—and persuade Hot Line to settle on the eve of trial.

### ii. Depositions:

34.    Collectively, the parties took a total of 13 depositions in this case: 12 by Plaintiffs and one by Hot Line. These depositions included depositions of Hot Line personnel and third parties to establish various facts of consequence, including facts relating to: (1) Hot Line's storage, handling, and disposal of Poles and TWW; (2) the absence of any storm water control measures at the Facility to control the discharge of contaminants in storm water; (3) the numerous sampling events conducted by Hot Line through its environmental consultant Philip Goalwin and his company E2C Remediation; (4) the scope and specifics of the 2022 partial remediation of the Facility by Hot Line; and (5) facts relating to Hot Line's financial condition and insurance coverage pertinent to remedies issues (*i.e.*, its ability to pay for new remedial measures relevant to the balance of hardships for Plaintiffs' anticipated request for permanent injunctive relief). Specifically, Plaintiffs deposed representatives of E2C Remediation, Hot Line's environmental consultant, various Hot Line officers and employees, and other parties.

35.    As is customary, for each of these depositions, Plaintiffs had to prepare by, among other things: (1) preparing and serving a notice of deposition or subpoena; (2) compiling relevant documents to authenticate and use in questioning the witness; (3) preparing deposition outlines and exhibits; (4) coordinating with opposing counsel and third parties on scheduling; (5) taking the deposition; and (6) analyzing the deposition transcript and incorporating relevant facts into Plaintiffs' factual summaries for use in the case.

36.    Additionally, Hot Line took one deposition, of Plaintiffs' designated expert witness Dr. Rogers. Plaintiffs engaged in preparation calls with Dr. Rogers to prepare him for the deposition and Plaintiffs defended the deposition.

### iii.  Written Discovery:

37.    Plaintiffs prepared and served extensive written discovery on Hot Line as well as key third parties, such as Hot Line's environmental consultant E2C Remediation. Plaintiffs also engaged in substantial efforts to respond to Hot Line's numerous written discovery requests as described below.

38.    Plaintiffs prepared and served Hot Line with the following sets of requests for production of documents: Plaintiffs' First Set of Requests for Production of Documents served on August 18, 2020 (26 RFPs); Plaintiffs' Second Set of Requests for Production of Documents served on November 26, 2021 (19 RFPs); Plaintiffs' Third Set of Requests for Production of Documents served on March 23, 2022 (27 RFPs); and Plaintiffs' Fourth Set of Requests for Production of Documents served on May 2, 2022 (16 RFPs).

39.    Plaintiffs prepared and served Hot Line with the following sets of requests for admission: First Set of Requests for Admission served March 1, 2022 (total of 63 RFAs); Second Set of Requests for Admission served March 18, 2022 (total of 15 RFAs); and the Third Set of Requests for Admission served May 2, 2022 (total of 62 RFAs).

40.    Plaintiffs prepared and served Hot Line with the following sets of interrogatories: First Set of Interrogatories served September 15, 2020 (two interrogatories); Second Set of Interrogatories served on February 26, 2022 (23 interrogatories); and the Third Set of Interrogatories served on March 25, 2022 (two interrogatories).

41.    Plaintiffs prepared and served Hot Line with a deposition notice pursuant to Federal Rule of Civil Procedure 30(b)(6), listing 20 topics on which Hot Line was to designate a corporate representative to provide testimony.

42.    Plaintiffs prepared and served Hot Line with a Request for Land Inspection pursuant to Rule 34 for inspection and sampling at the Facility.

43.    Plaintiffs served their initial disclosures on Hot Line on Sept. 18, 2020, and made numerous supplements to the initial disclosures thereafter.

44.    In addition to this discovery on Hot Line, Plaintiffs served 18 discovery-related subpoenas on third parties. Specifically, Plaintiffs served: five subpoenas to Hot Line consultants addressing Hot Line's sampling efforts; three subpoenas addressing issues involving Hot Line's insurance coverage; seven deposition subpoenas on Hot Line employees; two subpoenas relating to Hot Line's disposal of contaminated soil from the Facility; and a subpoena to the City of Santa Barbara (as owner of the Facility) requesting documents and a land inspection.

45.    To prepare this written discovery, Plaintiffs engaged in factual analysis to evaluate the facts needed to be established in discovery to support Plaintiffs' case, and worked to devise appropriate discovery requests to obtain that necessary information.

46.    Hot Line served numerous serial responses to Plaintiffs' written discovery. Hot Line made no fewer than 16 separate document productions (15 in response to Plaintiffs' requests for production of documents and one document production with its initial disclosures). Hot Line served a total of 26 separate written responses to Plaintiffs' written discovery: nine separate responses to Plaintiffs' interrogatories; seven separate responses to Plaintiffs' requests for admission; seven separate responses to Plaintiffs' requests for production; a response to Plaintiffs' request for land inspection; a response to Plaintiffs' Rule 30(b)(6) deposition notice; and objections to a subpoena to its insurance carrier Aspen Specialty Insurance Company ("Aspen").

47.    The third parties also made significant document productions in this case. Notably, Hot Line's environmental consultant E2C Remediation made a series of large document productions containing, among other things, reports, photos and laboratory reports from its sampling at the Facility and its 2022 partial

remediation of the Facility that its principal Mr. Goalwin directed. In addition, Hot Line's insurance carrier Aspen also made document productions relating to Hot Line's insurance coverage. Plaintiffs also obtained and reviewed substantial records via Public Records Act requests and Freedom of Information Act requests, which served primarily to support Plaintiffs' expert reports on the ecological resources of Goleta Slough.

48.    Plaintiffs undertook significant efforts to review this factual material. Plaintiffs reviewed the document productions, compiled key documents, and created factual summaries to be used to support Plaintiffs' case. Plaintiffs also reviewed the documents for completeness and to identify areas for follow-up discovery. And Plaintiffs reviewed the interrogatory and request for admission responses to assess completeness and to incorporate relevant facts into factual summaries and to prepare follow-up discovery.

49.    Hot Line also served written discovery on Plaintiffs and third parties. Specifically, Hot Line served one set of requests for admission on each Plaintiff, one set of interrogatories on each Plaintiff, three sets of requests for production of documents (10 RFPs) on each Plaintiff, and one subpoena for the production of documents on Plaintiff EcoRights. Hot Line also served Plaintiffs with deposition notices pursuant to Rule 30(b)(6), as well as a deposition subpoena, seeking deposition testimony on three topics relating to different aspects of Plaintiffs' sampling efforts. Hot Line also served a subpoena on Eurofins TestAmerica, a third party laboratory that processed some of Plaintiffs' samples, for deposition and production of documents.

50.    Plaintiffs undertook significant efforts to respond to Hot Line's discovery requests. Plaintiffs made no fewer than 19 separate document productions to Hot Line. Plaintiffs also served nine separate responses to Hot Line's requests for production, as well as responses to Hot Line's interrogatories and requests for admission.

### iv. Discovery Disputes and Motions to Compel:

51.     This case was made much more time consuming by Hot Line's obstructionist approach to discover matters. In general, Hot Line's approach to discovery was to avoid engaging with Plaintiffs until pressed, and then when pressed, promise much and deliver little. Hot Line's initial responses to Plaintiffs' discovery requests were generally woefully inadequate. In many cases, Hot Line ignored basic requirements of the Federal Rules of Civil Procedure. For example, Hot Line repeatedly failed to provide any written response to Plaintiffs' requests for production within the 30 days mandated by Rule 34(b)(2)(A). Time and time again, Plaintiffs attempted to work with Hot Line to obtain additional discovery responses. Once Plaintiffs expended the time and effort to write detailed meet-and-confer letters with legal authority supporting Plaintiffs' right to the discovery, Hot Line often agreed to make supplemental responses. Yet time and time again, Hot Line failed to follow through on its commitments. This obstructionism necessitated numerous follow-up requests by Plaintiffs. Often, Hot Line also ignored this follow-up until facing the prospect of responding to a discovery motion to compel. In some cases, not even the threat of a motion convinced Hot Line to confer and resolve disputes, ultimately forcing Plaintiffs to bring two successful motions to compel Hot Line's discovery responses. Even that did not end the difficulty, however. On one of the two major discovery disputes, even after being ordered to provide supplemental responses, Hot Line violated clear deadlines set by Magistrate Judge Kato—missing a document production deadline by five weeks—with no explanation. In these ways, Hot Line's obstructionist conduct made the fact discovery process more time-consuming than necessary.

52.     Throughout the case, Plaintiffs sent Hot Line numerous letters and emails as part of the meet-and-confer process to resolve discovery disputes. It is not feasible to provide a summary of all such communications. But to give a sense of scale, Plaintiffs reviewed discovery correspondence between Plaintiffs' counsel

Brian Orion and counsel for Hot Line. Mr. Orion sent at least 60 communications to counsel for Hot Line addressing various aspects of the parties' discovery disputes. These communications included letters and emails, and ranged from formal meet-and-confer letters with details of the outstanding disputes, to follow up emails after meet-and-confer calls to memorialize agreements, to more routine emails to follow up on outstanding issues.

53.   Mr. Orion was one of at least three of Plaintiffs' attorneys who engaged in some of the meet-and-confer process with Hot Line (the other two were myself and Jason Flanders at ATA). I also sent a significant number of communications to Hot Line on discovery disputes. Thus, the 60 communications mentioned above significantly understates the total amount of correspondence on discovery disputes in this case.

54.   Beyond the sheer number of communications, the total time it took to pursue these discovery disputes was greatly increased by Hot Line's failure to engage in meaningful conferral to resolve these disputes until threatened with motions practice. In the following sections, I provide three examples to illustrate this point.

### 1. Dispute Concerning Plaintiffs' First Set of Interrogatories:

55.   On September 15, 2020, Plaintiffs served Hot Line with Plaintiffs' First Set of Interrogatories. After receiving mere objections with no substantive response, on October 22, 2020, Plaintiffs sent Hot Line a detailed meet-and-confer letter.

56.   During an October 30, 2020 meet-and-confer call, counsel for Hot Line agreed to supplemental interrogatory responses by the following week. The time came and went without Hot Line providing the supplemental response.

57.   After the deadline passed, Plaintiffs' counsel sent a follow up email on November 10, 2020. Hot Line failed to respond. Following numerous follow

up attempts, the parties conducted yet another meet-and-confer call on December 21, 2020. During this call, counsel for Hot Line once again agreed that Hot Line would provide supplemental interrogatory responses, this time by the end of 2020. Once again, that deadline came and went.

58.    It was not until Plaintiffs drafted and served Hot Line with a Joint Stipulation for a discovery motion to compel that Hot Line responded. Specifically, Plaintiffs served Hot Line with the Joint Stipulation on January 27, 2021. Hot Line provided the promised supplemental response two days later, on January 29, 2021.

## 2.  Dispute Concerning Plaintiffs' First Set of Requests for Production:

59.    Another example concerns Hot Line's response to Plaintiffs' First Set of Requests for Production. Plaintiffs served the First Set of Requests for Production on August 18, 2020. After Plaintiffs granted Hot Line a two-week extension, Hot Line provided its written response on October 1, 2020. In the response, Hot Line stated it would be producing documents in response to certain requests, but failed to provide any date for its production. Three weeks later, having received no such production, Plaintiffs sent Hot Line a meet-and-confer letter on October 22, 2020.

60.    Hot Line failed to respond to this letter.

61.    One week later on October 27, 2020, Plaintiffs' counsel sent a follow up email message, requesting Hot Line schedule the meet-and-confer call. The parties held the met-and-confer call on Friday, October 30, 2020.

62.    After the call, on October 30, 2020, Plaintiffs' counsel sent an email confirming the commitments made by counsel for Hot Line on the call. Among other things, Hot Line committed to making a rolling document production, with the first documents to be produced early in the next week, with specific types of documents to be produced on different timelines.

63.   The next week came and went, but Hot Line did not make the promised production.

64.   Having received no production, on November 10, 2020, Plaintiffs' counsel sent a follow up email to counsel for Hot Line inquiring as to the status. In response, Hot Line made a production on November 20, 2020. Hot Line stated that this production was a partial production, but provided no timeline by which the production would be completed. This necessitated a further meet-and-confer call.

65.   On December 21, 2020, the parties met-and-conferred again on this dispute. During the call, Hot Line's counsel represented that it had gathered numerous responsive documents that it was preparing for production. However, Hot Line once again failed to fulfill its commitment and produce the documents for some time thereafter. It was not until after Plaintiffs sent Hot Line a further meet-and-confer letter, and held another meet-and-confer call, that Hot Line completed its production. All told, it took Plaintiffs two formal meet-and-confer letters, three meet-and-confer calls, and multiple follow up emails for Hot Line to provide what it had repeatedly agreed to provide.

### 3.  Dispute Concerning Plaintiffs' Second Set of Requests for Production:

66.   The final example concerns Hot Line's response to Plaintiffs' Second Set of Requests for Production. Plaintiffs served Hot Line with the Second Set of Requests for Production on November 26, 2021. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(A), Hot Line's response was due 30 days later, or by December 27, 2020. Hot Line provided no response by the deadline, instead responding on January 11, 2022 along with a limited document production.

67.   On March 3, 2022, Plaintiffs sent Hot Line a meet-and-confer letter. Among other things, this letter objected that Hot Line's January 11, 2022 production had included no emails, and had failed to include responsive

documents that Plaintiffs had obtained from third parties, thus casting doubt on Hot Line's search methods.

68.   During a March 9, 2022 meet-and-confer call, counsel for Hot Line conceded that the documents identified by Plaintiffs were responsive and should have been produced. Hot Line agreed to inquire with its client about the issues with its search and, if issues were discovered, to provide a proposed timeline for a supplemental production, and promptly make such supplemental production.

69.   On March 10, 2022, Plaintiffs' counsel sent Hot Line an email to confirm these and other agreements from the call. Hot Line never responded to this message.

70.   On March 11, 2022, Plaintiffs' counsel sent a follow up email, requesting an update. Hot Line never responded to this message.

71.   The parties held another meet-and-confer call on March 15, 2022. During the call, counsel for Hot Line committed to completing a supplemental search for responsive records by March 18, 2022.

72.   March 18, 2022 came and went without Hot Line making any supplemental document production.

73.   With the discovery cutoff of May 2, 2022 on the horizon, Plaintiffs could not afford to permit Hot Line to drag out its response any further. Therefore, on March 24, 2022, having still received no further response, Plaintiffs filed a motion to compel addressing this and other issues. *See* Dkt. 133 ("Motion to Compel I").

74.   In the Motion to Compel I, Plaintiffs requested the Court order Hot Line to (1) conduct a supplemental search in response to the Second Set of Requests for Production, and (2) make a supplemental production prior to the May 2, 2022 discovery cutoff. Dkt. 133 at 14.

75.   Hot Line offered no opposition to this request. Indeed, Hot Line conceded that a supplemental search was warranted, stating: "Hot Line is in the

process of making a supplemental production, and will have done so by the time of the hearing on this Motion." Dkt. 133 at 15.

76.     The Motion to Compel I was set for hearing on April 14, 2022. April 14, 2022 came and went and Hot Line had not done what it had represented to the Court that it would do, *i.e.*, it had not made a supplemental production.

77.     On April 14, 2022, Magistrate Judge Kato granted the Motion to Compel I in full. *See* Dkt. 147. Magistrate Judge Kato's order required, among other things: "No later than May 2, 2022, Hot Line shall complete its supplemental production in response to Plaintiffs' First and Second Requests for Production." Dkt. 147 at 6.[1]

78.     Thereafter, Hot Line made a series of supplemental productions, yet despite the Court's order, it failed to complete the productions by May 2, 2022.

79.     Through late April and early May 2022, Plaintiffs' counsel continued to send messages to Hot Line seeking for it to meet-and-confer on this issue.

80.     On May 19, 2022, Hot Line sent a response letter to Plaintiffs. In that letter, Hot Line's counsel said he was in the process of reviewing documents for a supplemental production and "hope[s] to have the full production ready next week." This was now over two weeks past the Court ordered deadline, and Hot Line still had not completed its production.

81.     The next week came and went and Hot Line did not compete its production.

82.     On June 8, 2022, Hot Line made another supplemental production, which included the missing documents in response to Plaintiffs' Second Set of

---

[1] The Motion to Compel I had also sought Hot Line to serve a supplemental response to one of Plaintiffs' interrogatories. Judge Kato also granted this request, and ordered Hot Line to serve its supplemental interrogatory response within seven days, or by April 21, 2022. Dkt. 147 at 6. Hot Line violated this order. It failed to provide its supplemental interrogatory response until April 29, 2022.

Requests for Production. This was five weeks after the deadline ordered by Magistrate Judge Kato.

83.     Thus, that it took an extraordinary effort for Plaintiffs to obtain this supplemental production, including numerous letters, meet-and-confer calls, a successful motion to compel, and follow up after Hot Line violated Judge Kato's order. In this way, Hot Line's lack of diligence in managing discovery issues greatly increased the time necessary for Plaintiffs to litigate this case.

### 4.  Other Discovery Motions:

84.     Plaintiffs brought a total of three discovery motions: two motions to compel against Hot Line, and one motion to enforce a third party subpoena, which Hot Line opposed.

85.     The Motion to Compel I was discussed above (*see* Dkt. 133). The second motion to compel dealt with certain additional inadequate written discovery responses of Hot Line, and with Hot Line's objections to Plaintiffs' Rule 30(b)(6) deposition topics. *See* Dkt. 161 ("Motion to Compel II"). The Motion to Compel II was granted in part on July 27, 2022. Dkt. 176. Magistrate Judge Kato granted Plaintiffs requests and ordered Hot Line to serve supplemental responses to: (1) Plaintiffs' Third Set of Requests for Admission; (2) Plaintiffs' Third Set of Requests for Production; and (3) Plaintiffs' Fourth Set of Requests for Production. *Id*. at 11.

86.     On June 23, 2022, Plaintiffs brought a motion to compel a response to Plaintiffs' subpoena on Hot Line's insurance carrier, Aspen Specialty Insurance Company ("Aspen"). Dkt. 164. Aspen brought a related motion to quash the same subpoena. Dkt. 166. The Court denied Plaintiffs' motion to compel without prejudice in light of the Court granting Plaintiffs' Motion to Compel II, which would provide further responses to written discovery on this topic. Dkt. 176.

### b.  Expert Discovery:

87.   In addition to fact discovery, Plaintiffs engaged in significant expert discovery in this case. The ultimate issue in this case was whether the contaminants at the Facility may present an imminent and substantial endangerment to health or the environment, in violation of RCRA. Establishing this ultimate issue required proving: (1) the existence of contaminants at the Facility; (2) their fate and transport in storm water and ability to reach sensitive off-site environments, including the Goleta Slough; (3) the mechanisms by which birds, fish, and others, including humans, were being exposed to these contaminants; and (4) the toxicology of these contaminants and ultimate harm to the environment and health being caused by these contaminants.

88.   Making this showing required technical testimony by Plaintiffs' expert witness, Dr. William Rogers. As such, Plaintiffs engaged in the following types of expert discovery tasks: (1) preparing key documents and factual summaries (including of soil and storm water sampling at the Facility, the storm water discharge pathway for pollutants to reach Goleta Slough, and the existence and type of wildlife present in Goleta Slough) for Dr. Rogers to review in connection with preparing his opening expert report; (2) working with Dr. Rogers to prepare his opening report, which was served on November 10, 2022, as well as the other expert disclosures required by Rule 26(a)(2)(B); (3) reviewing the opening expert report of Hot Line's expert, Mr. Goalwin, served on November 11, 2022, and preparing critiques for Dr. Rogers to consider; (4) working with Dr. Rogers to prepare his rebuttal report, served on December 15, 2022, to rebut the contentions in Mr. Goalwin's opening report; (5) preparing new material for Dr. Rogers to review as new information developed, such as the results of new soil and storm water sampling conducted after the initial round of expert reports was prepared; (6) working with Dr. Rogers to prepare supplemental expert reports to address new information (summarized further below); (7) engaging with Dr. Rogers to evaluate the various remediation proposals made by Hot Line, including

to evaluate whether they will adequately remediate the Facility, and to inform Plaintiffs' settlement position; (8) engaging in deposition preparation with Dr. Rogers to prepare for Hot Line's deposition of him; and (9) preparing for Dr. Rogers to appear at trial as Plaintiffs' key witness.

89. As mentioned, one of the major expert discovery tasks involved preparing supplemental expert reports of Dr. Rogers to address changed circumstances at the Facility. Plaintiffs worked with Dr. Rogers to prepare three supplemental reports, served on February 8, 2023; June 14, 2023; and September 26, 2023.

90. Dr. Rogers' February 8, 2023 supplemental report addressed two new facts: (1) Dr. Rogers reviewed photos taken by one Plaintiffs' representatives taken at the Facility on December 23, 2022, which showed the continued presence of TWW wood chips throughout the Facility, to refute Mr. Goalwin's contention in his opening report that all such wood chips had been removed; and (2) Dr. Rogers reviewed the photos and videos taken by Plaintiffs' representative on December 27, 2022 showing off-site flow of surface water into the storm drain that flows into Goleta Slough.

91. Dr. Rogers' June 14, 2023 supplemental report addressed new facts in the form of new sampling at the Facility taken in April 2023. Specifically, Plaintiffs took soil samples April 24, 2023, and Mr. Brenton Armstrong, a representative of Hot Line's consultant E2C Remediation took soil samples in April 2023. This expert report thus discussed the results of this sampling as relates to the ongoing presence of contamination at the Facility.

92. Dr. Rogers' September 26, 2023 supplemental expert report addressed new facts relating to the City of Santa Barbara retaining an environmental consultant to provide third party sampling at the Facility. Specifically, this consultant, Rincon Consultants, Inc. ("Rincon"), conducted soil sampling at the Facility on July 19, 2023, during which it took 10 soil samples. Dr. Rogers

therefore discussed the importance of this sampling, which corroborated his conclusion that the Facility remained significantly contaminated. Additionally, on August 22, 2023, counsel for Hot Line provided a draft Workplan For Soil Excavation, Transportation, Disposal & Replacement ("the Work Plan") (dated August 8, 2023) that proposed to remove the top 1 foot of soil from the Facility and dispose of this soil at an off-site location. Dr. Rogers reviewed the Work Plan and opined that it was not prepared in accord the standards of the environmental risk assessment profession and was inadequate to guide any further remediation at the Facility. Dr. Rogers reviewed a report of Rincon also commenting on the Work Plan, which reached the same conclusions. Lastly, this supplemental report also addressed sampling conducted by Plaintiffs on August 22, 2023 in Firestone Ditch, and opined that the sampling supported Dr. Rogers' conclusion on the fate and transport of contaminants from the Facility reaching Goleta Slough via Firestone Ditch.

### c. Trial Preparation:

93.     Trial in this case was set to begin on October 10, 2023. The case settled the day before, on October 9, 2023. At the time the case settled, I was on my way to Los Angeles for trial and my second chair trial counsel, Brian Orion, was already in Los Angeles. At that point, Plaintiffs had fully prepared this case for trial.

94.     The substantial time and investment in the pretrial phase is evident from the docket in this case. Of the 255 entries on the docket, the pretrial entries begin at Docket No. 188 with the parties' pretrial filings on July 7, 2023 in advance of the then-existing trial date of August 15, 2023. Thus, roughly 25% of all case filings were made in the trial preparation phase of this case. Much of the docket in this case before Plaintiffs were able to reach a consent decree with Southern California Edison ("SCE") concerned the prior phase involving work on

the claims against SCE. Following settlement with SCE, the claims against SCE were dismissed in Docket No. 123. As such, with respect to the post-SCE case against Hot Line, roughly 50% of all the docket entries in the post-SCE portion of the case occurred in the pretrial preparation phase of the case. Thus, the failure of this case to settle until the eve of trial resulted in a substantial investment of time for Plaintiffs to prepare for trial.

95.    The trial preparation work was substantial, and represents a substantial portion of Plaintiffs' total lodestar in this case. This section details the work Plaintiffs performed preparing for trial.

96.    Initially, this case was set for trial on August 15, 2023. On July 24, 2023, the Court continued the trial date, *sua sponte*, to October 10, 2023. *See* Dkt. 216. Prior to that continuance, Plaintiffs had engaged in pretrial preparations under the then-existing trial schedule.

97.    Plaintiffs began working on trial matters in April 2023. This initial work included: (1) Plaintiffs beginning the process of culling the evidentiary record in the case down to the key documents to be used as trial exhibits; (2) preparing and serving trial subpoenas to trial witnesses; and (3) working on a proposed stipulation to address fact, law, and evidentiary matters, among other things.

98.    On June 19, 2023, Plaintiffs' counsel and counsel for Hot Line attended the mandatory pretrial meeting of counsel pursuant to Local Rule 16-2. During this call, I proposed the parties stipulate to certain fact, law, and evidentiary matters. I followed up by sending counsel for Hot Line a draft that I had prepared of what became the Stipulation to Facts, Evidentiary Matters and Conclusions of Law (Dkt. 199). I sent multiple emails following up on these proposed stipulations, and we discussed this on subsequent pretrial meet-and-confer calls with counsel for Hot Line. Ultimately, these efforts were partially successful in that the stipulation permitted the parties to streamline a few of the

issues in dispute and simplify the prospective trial somewhat. However, Hot Line declined to agree to the majority of Plaintiffs' proposed fact and law stipulations which greatly increased the amount of work that I and my co-counsel had to devote to trial preparation to establish the fact and law propositions at trial that Hot Line would not agree to.

99.    Plaintiffs prepared and served dozens of trial subpoenas in anticipation of the original trial date set for August 15, 2023. After the trial was continued to October 10, 2023, Plaintiffs had to re-serve these trial subpoenas on the witnesses. A large percentage of these were served on laboratory personnel for the various laboratories that processed the sample results from Plaintiffs and Hot Line over time. Plaintiffs had requested Hot Line stipulate that the sample results were authentic and admissible for their truth. Hot Line expressed a willingness to agree to authentication but failed to agree on hearsay grounds until so soon before trial that it was too late to avoid Plaintiffs serving the subpoenas. Additional subpoenas were served on the various third parties, including a number of Hot Line employees, E2C Remediation witnesses, third parties from the City of Santa Barbara with relevant knowledge, third parties from Hot Line's insurance carriers, and third parties with knowledge of the fraudulent activities of Hot Line's expert Mr. Goalwin.

100.  Plaintiffs spent time sending correspondence to these third party witnesses to: (1) ensure they were available for trial on the dates Plaintiffs intended to call them; and (2) to communicate to them that the first trial date had been continued, and to re-confirm their availability for the new trial dates.

101.  On July 7, 2023, Plaintiffs filed their first round of trial filings, as follows: (1) Plaintiffs' Pretrial Memorandum of Contentions of Fact and Law (Dkt. 196); (2) Plaintiffs' Proposed Trial Findings of Fact and Conclusion of Law (Dkt. 201); (3) Joint Exhibit List (Dkt. 194); (4) Plaintiffs' Witness List (Dkt. 200); (4) Plaintiffs' three motions in limine (Dkt. 195, 197, 198); and (5) a joint

Stipulation to Facts, Evidentiary Matters and Conclusions of Law (Dkt. 199).
Plaintiffs also engaged in other trial preparation tasks, including coordinating with
and preparing trial witnesses, creating demonstrative exhibits, drafting
examination and cross-examination questions, drafting opening statements and
points to make in closing argument, and similar tasks. Later, Plaintiffs also
submitted a Joint Status Report Regarding Settlement (Dkt. 231).

102.   Together, Plaintiffs and Hot Line briefed seven separate motions in
limine. Plaintiffs prepared and filed three motions in limine: (1) to admit the
evidence discussed above of the fraud conviction of Hot Line's expert Philip
Goalwin (Dkt. 197); (2) to exclude Mr. Goalwin's testimony (Dkt. 195); and (3)
to limit the testimony of one of Hot Line's sampling representatives, Mr. Brenton
Armstrong (Dkt. 198). These filings were fairly extensive, including, respectively,
14, 14, and 20 related declarations, exhibits and other supporting documents.

103.   Hot Line submitted four separate motions in limine: (1) to exclude
reference to certain regulatory thresholds by Plaintiffs' expert (Dkt. 190); (2) to
exclude reference to endangered species in Goleta Slough (Dkt. 191); (3) to
exclude evidence of Mr. Goalwin's criminal history (Dkt. 192); and (4) to exclude
evidence of the storm water connection between the Facility and Goleta Slough
(Dkt. 193). Plaintiffs filed four oppositions, one for each of these motions (Dkt.
205, 206, 212, 213). These oppositions also included, respectively, 15, 11, 15, and
3, related declarations and exhibits, including a declaration by Plaintiffs' expert
Dr. Rogers.

104.   On July 14, 2023, Plaintiffs worked with counsel for Hot Line to
prepare and file a Proposed Joint Pretrial Order. Dkt. 211-1. In this filing,
Plaintiffs noted that Hot Line had failed to file its Proposed Findings of Fact and
Conclusions of Law on July 7, 2023, as required by the scheduling order. Hot
Line ultimately filed this document late, on July 14, 2023. *See* Dkt. 210.

105.  Further Plaintiffs' attorney hours were generated responding to events stemming from Hot Line's lead counsel, Mr. Joseph A. Salazar, practice of scheduling himself to try multiple cases at a time or in back-to-back fashion and repeatedly asking courts to delay hearing matters to accommodate his calendar congestion. As discussed below, Mr. Salazar repeatedly asked the Court to delay the trial in this matter, necessitating time spent responding and objecting to these delay requests.

106.  Specifically, on July 21, 2023, Hot Line filed a Motion to Continue Trial, seeking to continue the August 15, 2023 trial date, along with an *ex parte* application to have the motion heard on shortened time. Dkt. 214, 214-2. Hot Line's request was based on the fact that Hot Line's counsel, Mr. Salazar, had a trial conflict with another trial he was scheduled to handle. Plaintiffs opposed the request. Dkt. 215. Among other things, Plaintiffs submitted evidence that showed that Mr. Salazar knew he had been "double set" for trial on August 15, 2023, and that he had a third trial scheduled for the day prior, on August 14, 2023, and that Mr. Salazar appeared to have a practice of scheduling himself to try multiple cases at a time, or at least back-to-back with little time in between. *Id*. at 2-3.

107.  On July 24, 2023, the Court denied Hot Line's *ex parte* request as moot, with the Court moving the trial *sua sponte* to October 10, 2023 "due to conflicts with the Court's calendar and the parties' voluminous motions in limine . . . ." Dkt. 216. The Court's ordered the parties to meet-and-confer and propose alternative trial dates if necessary.

108.  Following discussions between the parties, on August 16, 2023, Hot Line submitted a joint letter to the Court. Dkt. 221. In that letter, Hot Line made its second request to continue the trial date in this case, seeking to move trial until sometime in early 2024 due to Mr. Salazar's congested trial schedule.

109.  In response, on August 18, 2023, the Court issued a minute order. Dkt. 224. The Court maintained the current trial date of October 10, 2023, and

ordered the parties to attend the mediation that Plaintiffs had suggested in the above-referenced joint letter to the Court, including ordering Hot Line's principals to attend. *Id*. at 2. In so doing, the Court expressed puzzlement why this case had not settled, stating:

> Plaintiffs have proposed attempting mediation once again in light of new evidence disclosed in the Letter. The Court agrees that further settlement efforts would be a good use the parties' time. It is frankly puzzling that Plaintiffs' claims against Southern California Edison Company settled (despite being vigorously litigated), while similar if not identical claims against Hot Line Construction, Inc. have not settled despite the extraordinary efforts of Magistrate Judge Wilner, one of the Court's most effective mediators. Defendant has not expressed an opinion about a further mediation on the terms Plaintiffs describe. The Court therefore concludes that the parties should make further efforts at settlement before further taxing the parties' and the Court's resources. And Plaintiffs' proposal seems reasonable. Given the nature of this case, the additional evidence, and the prior settlement, this case should settle.

*Id*.

110.  On September 21, 2023, Hot Line made its third request to continue the trial. Once again, Hot Line moved for a continuance via an *ex parte* to shorten time to hear the motion to continue. Dkt. 233, 233-1. Hot Line claimed that new "[c]ircumstances have fundamentally altered the state of play within the last two weeks," and that Mr. Salazar once again had a trial conflict, as he was now "is set for trial in three separate cases, including this one." Dkt. 233-1 at 1, 3. The new circumstances included the property owner, City of Santa Barbara, objecting to Hot Line's eleventh hour, rushed new remediation plan. *Id*. at 1-2. On September 22, 2023, Plaintiffs filed an opposition to the new *ex parte* application. Dkt. 228.

111.  On September 25, 2023, following the Pretrial Conference, the Court denied Hot Line's request to continue the trial. Dkt. 239. It was only after Hot Line had exhausted its ability to delay the trial that it finally engaged meaningfully in settlement discussions and agreed, the day before trial was set to commence, to a mutually acceptable Consent Decree resolution of Plaintiffs' claims for further site investigation and remediation.

112.  Plaintiffs worked to simplify the trial by preparing written declarations to serve as direct testimony of Plaintiffs' witnesses. On September 29, 2023, Plaintiffs filed their Notice of Filing of Written Trial Direct Testimony and Lodging of Proposed Written Direct Trial Testimony (Dkt. 241, 242), along with the written direct testimony as declarations attached thereto. Plaintiffs prepared these for the following witnesses: Christopher Crow, Christopher Goodson, Ben Pitterle, Joseph Rios, Tevin Schmitt, Robert Warner, and Ian Wren.

113.  On October 3, 2023, Hot Line filed objections to these direct examinations. Dkt. 244. On October 5, 2023, Plaintiffs filed a response to these objections. Dkt. 246.

114.  Plaintiffs also lodged deposition designations in lieu of live trial testimony of some witnesses. This included lodging deposition designations for Lacey Harston, Sara Iza, and Molly Troup.

115.  Of note, it took multiple communications to counsel for Hot Line before Hot Line agreed that Ms. Troup's testimony could be submitted via her deposition. Plaintiffs communicated to Hot Line multiple times that Ms. Troup (a sampler of Plaintiffs') was unavailable for the August 15, 2023 trial due to her anticipated maternity leave. Hot Line repeatedly ignored Plaintiffs' requests to so stipulate. After numerous emails and phone calls to counsel for Hot Line failed to resolve the matter, Plaintiffs were forced to draft an *ex parte* application along with supporting declarations, which we served on Hot Line on April 24, 2023,

before Hot Line engaged and agreed. In this way, Hot Line's obstructionist failure to promptly confer and resolve a dispute multiplied the litigation in this case.

116.  On October 3, 2023, Plaintiffs filed Plaintiffs' Trial Brief Pursuant to Local Rule 16-10. Dkt. 245. Among other things, this Trial Brief addressed new information occurring since the prior pretrial filings were made on July 7, 2023, including that the City of Santa Barbara, the owner of the Facility, has demanded that Hot Line conduct further investigation and remediation of the Facility, consistent with Plaintiffs' position in this litigation. This Trial Brief also responded to the numerous erroneous contentions in Hot Line's Memorandum of Contentions of Fact and Law.

117.  On October 8, 2023, two days before trial, Hot Line filed a late trial brief without leave of Court to file the document out of time. Dkt. 247. To address this late-filed brief, Plaintiffs filed objections to the trial brief on October 8, 2023. Dkt. 248.

118.  As noted, the case settled on October 9, 2023, the day before trial. *See* Dkt. 249, 252.

### d.  Pursuing Settlement:

119.  Plaintiffs repeatedly sought to settle this case with Hot Line. These efforts began at the very outset of the case. Plaintiffs made a serious, written settlement offer to Hot Line on May 13, 2020. At this time, Plaintiffs sent a proposed written consent decree to embody the proposed terms of settlement, and requested Hot Line's counsel schedule a settlement call. Plaintiffs followed up with a detailed settlement letter on May 20, 2020. This was all before the original complaint was filed on May 29, 2020. *See* Dkt. 1.

120.  Plaintiffs and Hot Line held numerous settlement discussions at various junctures during this case. This included nine settlement mediation sessions: eight sessions mediated by Magistrate Judge Wilner (*see* Dkt. 99, 112,

115, 130, 131, 132, 182, 183), and one mediation in September 2023 before a private mediator as ordered by the Court.

121.  This case had a very good opportunity to settle in early 2022. In November 2021, Plaintiffs successfully settled the case against co-Defendant Southern California Edison ("SCE"). Plaintiffs made a concerted effort to settle this case with Hot Line at the time, urging that Hot Line should agree to a settlement along the same line as that which SCE had agreed to, and that the Court had approved.

122.  In particular, on November 9, 2021—the same day the Court entered the consent decree with SCE—I sent a copy of the SCE consent decree via email to Magistrate Judge Wilner and lead counsel for Hot Line, requesting Hot Line resume settlement negotiations and requesting the Court's assistance in connection therewith. I noted that Plaintiffs had made numerous detailed settlement proposals to Hot Line earlier in the case, but that to date, Hot Line had declined to respond to these communications, and that Plaintiffs still lacked any information concerning what Hot Line would view as a mutually acceptable settlement. I made it plain that Plaintiffs remained ready, willing, and able to engage in serious settlement discussions and consider reasonable compromises along the lines of the compromises reached with SCE.

123.  The parties attended three settlement mediations before the Magistrate Judge Wilner in February 2022. Plaintiffs came prepared to the discussions with a detailed proposal on settlement. Following the last session, on February 24, 2022, Plaintiffs sent Hot Line a formal settlement offer, laying out the specific terms that Plaintiffs would accept in settlement for Hot Line's remediation of the Facility and that Plaintiffs would accept to resolve their claim for reimbursement of attorneys fees and costs.

124.  Hot Line never made a formal response to this February 24, 2022 settlement offer. Nonetheless, Plaintiffs continued working to pursue settlement.

On March 17, 2022, I sent a message to Hot Line in which I once again outlined Plaintiffs' proposed terms of settlement. On April 1, 2022, I followed up by sending Hot Line a detailed memorandum laying out the proposed terms of a further site remediation at the Facility.

125.  Unfortunately, rather than settle on reasonable terms, Hot Line pursued a litigation approach of trying to establish that Plaintiffs' RCRA claims should be dismissed because Hot Line had adequately cleaned up the Facility.

126.  Hot Line purported to rely upon site remediation work directed by its expert Philip Goalwin in the summer of 2022. As described in one of Plaintiffs' pretrial motions in limine, Mr. Goalwin was convicted of the crime of Presentation of Fraudulent Claims in violation of California Penal Code section 72. *See* Dkt. 197, 197-3 (criminal conviction order). This conviction stemmed from Mr. Goalwin's submittal of false invoices on six occasions for reimbursement from the California State Water Resources Control Board's Underground Storage Tank Cleanup Fund ("Fund") with the intent to defraud.

127.  Following the criminal conviction, the evidence showed a continuing history of fraudulent conduct by Mr. Goalwin. In 2007, the State of California filed a civil complaint against E2C Remediation, for which Philip Goalwin was the principal geologist and CEO/President. Dkt. 197-4 (civil complaint). Many of the fraud allegations in this civil case arose out of Mr. Goalwin's continued submission of fraudulent claims to the Fund. *Id*. In February 2010, the civil case resulted in a Stipulated Judgment ordering monetary payments including civil penalties, and injunctive relief against E2C Remediation and Mr. Goalwin. *See People ex rel. Brown v. E2C Remediation LLC, et al*, No. 07AS04626, 2010 Cal. Super. LEXIS 974 (Cal. Super. Ct. Feb. 26, 2010); *see also* Dkt. 197-5 (judgment). The judgment against E2C Remediation for fraud totaled $1.2 million and was significant enough for the State of California to issue a press release announcing the judgment. Dkt. 197-6.

128.  Thereafter, in August of 2012, the State of California filed a Motion to Enforce Judgment of the civil case, stating that "[t]he E2C Defendants have repeatedly violated the terms of the judgment in this matter by submitting false and misleading claims for reimbursement to the fund." Dkt. 197-7. The State of California included an allegation that E2C not only submitted fraudulent double billing, but then intentionally sought to hide the double billing to mislead the California State Water Resources Control Board and the Fund. *Id*. A declaration from a state employee detailed the factual allegations about how E2C Remediation violated the Stipulated Judgment by submitting additional false and misleading claims for reimbursement from the Fund. Dkt. 197-8. These allegations included the contention that Mr. Goalwin had intentionally sought reimbursement for unapproved site remediation work performed in violation of the approved workplan, then "mixed costs associated with the approved and unapproved corrective action work to mislead the Fund." *Id*. ¶ 4 (ECF Page 4). The state's Motion to Enforce sought $150,000 in penalties. Dkt. 197-12. This matter was resolved in February 2013 by a Stipulated Judgment against Philip Goalwin and E2C Remediation imposing a $75,000 civil penalty. *People ex rel. Harris v. E2C Remediation, LLC et al.*, No. 07AS04626, 2012 Cal. Super. LEXIS 697 (Cal. Super. Ct. Feb. 4, 2012); *see also* Dkt. 197-9.

129.  In addition to the civil case, the California Department of Consumer Affairs Board for Professional Engineers, Land Surveyors, and Geologists filed an Accusation seeking revocation or suspension of Philip Goalwin's Professional Geologist License (No. 4779) for committing an "act of misrepresentation, fraud, or deceit by a geologist or geophysicist in his or her practice." Dkt. 197-10. The California Board for Professional Engineers, Land Surveyors, and Geologists issued a decision on Sept. 10, 2015, approving a Stipulated Settlement and Disciplinary Order against Philip Goalwin that revoked his Professional Geologist

License (No. 4779) but stayed the revocation during a four-year probationary period contingent on compliance with the settlement order. Dkt. 197-11.

130.   Based on this and their own in-depth investigation, Plaintiffs were convinced that they could demonstrate at trial that Mr. Goalwin lacked credibility and that his contentions that the site had been cleaned up could be shown to not be accurate. Therefore, they resolved to press forward with their case. In particular, Plaintiffs reviewed E2C Remediation's post-remediation report and found out that E2C Remediation had violated its own work plan by making no effort to remove TWW wood chips from the majority of the Facility. Of note, this failure to adhere to the relevant site work plan was analogous to the violation that the State of California had alleged Mr. Goalwin committed in connection with the Motion to Enforce. *See* Dkt. 197-8 ¶ 4 (ECF Page 4) (alleging that Mr. Goalwin had intentionally sought reimbursement for unapproved site remediation work performed in violation of the approved workplan, then "mixed costs associated with the approved and unapproved corrective action work to mislead the Fund."). Accordingly, Plaintiffs returned to the Facility for an inspection in December 2022, which confirmed that E2C Remediation had failed to remove wood chips from the Facility. Plaintiffs documented this with extensive photographs and videos showing that contaminated wood chips remained dispersed throughout the Facility.

131.   As a result of observing that E2C Remediation had not performed Hot Line's promised wood chip removal at the Facility, Plaintiffs decided that further site sampling was prudent to determine the extent of the environmental hazards posed by any remaining contamination at the Facility. On December 27, 2022, Plaintiffs collected stormwater runoff samples from the Facility perimeter which contained extremely high levels of dioxins, World Health Organization TEQ values of 10.82 pg/L and 18.948 pg/L, levels exceeding regulatory agencies' environmentally protective standards and the cleanup standard SCE committed to

in its consent decree by orders of magnitude (SCE's 2.8 x 10-8 ug/L dioxins TEQ standard is the same as .028 pg/L). Plaintiffs submitted further expert reports to Hot Line from their expert, Dr. William Rogers. Dr. Rogers' supplemental expert report of February 8, 2023 addressed the remaining TWW wood chips following Hot Line's partial remediation, and subsequent supplemental reports addressed further new facts arising thereafter. These reports collectively documented Dr. Rogers' opinion that the Hot Line's limited remediation effort had failed to remove all of the pentachlorophenol and dioxins contaminants at the Facility and that the Facility remained heavily contaminated. Dr. Rogers further opined that residual site contamination was causing highly elevated levels of dioxins in storm water runoff to flow from the Facility into the nearby Goleta Slough. He concluded that confirmation sampling of soils and storm water runoff was needed to devise a comprehensive plan for further site remediation. Hot Line, for its part, submitted an expert report from E2C's principal Philip Goalwin apparently opining that the Facility had been fully remediated, but which failed to rebut Dr. Rogers' analysis.

132.  Throughout this time, I was concerned that settlement efforts were being undermined by Hot Line's lack of attention to the settlement process. I expressed this concern repeatedly to both Hot Line and to Magistrate Judge Wilner, in the hopes of changing the dynamic and making settlement possible.

133.  For instance, on February 7, 2022, in advance of a February 8, 2022 mediation session with Magistrate Judge Wilner, I sent a message to Magistrate Judge Wilner specifically requesting that the Court encourage Hot Line's principals to attend the mediation session, as well as principals from the insurance carrier paying the legal fees and funding a potential settlement. Unfortunately, Hot Line's principals did not attend the mediation.

134.  Similarly, on March 4, 2022, I sent an email to counsel for Hot Line. Hot Line had sent me a message requesting copies of Plaintiffs' sampling results

in advance of an upcoming mediation. I responded by pointing out that we had sent the sampling data over a week ago. Hot Line's ignorance of this data was especially surprising considering that Hot Line had had this sampling data for months, even years in some cases, at this point, as it had been included in Plaintiffs' original pre-filing citizen suit notice letter in November 2019, and further provided in March 2020.

135.  In my message to Hot Line of March 17, 2022 in advance of another mediation, I also urged Hot Line to have principals with decision-making authority present at the mediation session rather than just counsel. Hot Line failed to do so.

136.  I suspected that Hot Line's principals were not being informed of Plaintiffs' settlement offers. Plaintiffs' counsel therefore inquired about this during the deposition of Hot Line's then-CFO (now CEO), Kelly Kutchera. Plaintiffs asked if she was aware of Plaintiffs' March 17, 2022 settlement proposal. She responded that she was not.

137.  More surprisingly, Ms. Kutchera testified that she did not even know who was representing Hot Line in this case. At her deposition, Ms. Kutchera testified that she did not know who Joe Salazar was and even expressed surprise that Lewis Brisbois was the law firm representing Hot Line in the case.

138.  All of this suggests that counsel for Hot Line failed to keep its principals adequately informed about this case. Indeed, Hot Line never had a principal present at any settlement session until the settlement mediation in September 2023 – just before trial – and only then because the Court specifically ordered Hot Line to have principals present. This severely thwarted Plaintiffs' good faith efforts to settle.

139.  In response to an email from counsel for Hot Line, as noted, on April 1, 2022, I sent Hot Line a detailed memorandum laying out the proposed terms of a further site remediation at the Facility. Hot Line did not respond, and had

provided no response three weeks later, when I sent a follow up message. The parties exchanged conceptual proposals, but Hot Line never made any formal settlement proposal during this time.

140.  After receiving the first two of Dr. Rogers' expert reports, on January 20, 2023, Hot Line at last responded to Plaintiffs' long-standing settlement offer. Hot Line made no mention of Dr. Rogers' expert reports and his opinions that the site remained heavily contaminated and that further site investigation and cleanup would be needed. However, Hot Line did acknowledge that Plaintiffs would likely want to review a complete response from E2C and Philip Goalwin to Plaintiffs' subpoena for the relevant case files prior to responding to this settlement proposal. Hot Line promised to provide these documents "shortly." However, Hot Line continued to delay providing these documents and did not provide a complete set of these documents until March 28, 2023—over two months later. This further delayed any settlement progress while Hot Line failed to provide documents that it specifically mentioned should be reviewed by Plaintiffs.

141.  Even much later, after being ordered by the Court to attend the mediation session shortly before trial, Hot Line's counsel still exhibited a lackadaisical attitude towards settlement. The Court's Minute Order of August 18, 2023 had required the parties to each propose two mediators and schedule the mediation "as soon as possible." Dkt. 224. Heeding these directives, Plaintiffs emailed counsel for Hot Line on the same day that the Court issued the Minute Order proposing one of the two mediators and requested Hot Line's conferral on selection of the mediator. Plaintiffs sent a second email message to Hot Line counsel on August 23 proposing a second mediator, Gideon Kracov, proposing dates for the mediation, and again requesting Hot Line counsel to indicate when they would be available to confer. Counsel for Hot Line did not respond to either of these messages or proposed any mediators of their own. After repeated requests from Plaintiffs, on August 29, 11 days after the Court's Minute Order, Hot Line

counsel finally nominated two mediators of their own, but still did not provide available dates for the mediation.

142.  After a further message from Plaintiffs concerning the need to set up the mediation in accord with the Court's order went unanswered, Plaintiffs prepared and sent Hot Line a draft *ex parte* application for relief addressing Hot Line's failure to agree to selection of a mediator and to agree to mediation dates. After this, Hot Line finally responded, stating it would accept Mr. Kracov and suggested September 12 as a mediation date. Plaintiffs immediately retained the mediator for September 12, 2023.

143.  In advance of the mediation, as requested by the mediator, Plaintiffs provided Mr. Kracov and Hot Line with copies of Plaintiffs' most recent settlement offer letter and numerous other documents to provide Mr. Kracov with context for the case. Hot Line did not provide a written settlement proposal to Plaintiffs in advance of the mediation.

144.  The parties conducted an all-day mediation with Mr. Kracov on September 12, 2023. However, consistent with its past approaches, Hot Line did not present a serious and complete settlement counterproposal in this mediation and the matter did not settle.

145.  In connection with the aforementioned mediation, in September 2023, Plaintiffs had provided their detailed daily attorney time records and detailed cost itemization to Hot Line along with an attorney fee and cost recovery proposal. Hot Line provided a fees and costs settlement counter proposal, but the parties remained far apart on this issue and mutually agreed to just settle the injunctive relief portion of Plaintiffs' claims while further agreeing to continue to attempt to negotiate resolution of the fees and costs matter in the Consent Decree approved by the Court on October 11, 2023. Dkt. 252.

146.  In accord with the parties' Stipulation RE: Consent Decree and accompanying court order (Dkt. 252), Plaintiffs provided an update of its

attorneys time records and cost itemization in October 2023 along with an updated attorneys fees and costs settlement proposal. Though obligated by the Stipulation and accompanying court order (Dkt. 252) to provide a counter offer response by December 8, 2023, Hot Line did not do so until December 12, 2023. When it did, Hot Line's fee proposal was lower than the proposal it had made during the September mediation. On December 17, 2023, Plaintiffs sent a message to Hot Line requesting an explanation for this backwards movement on its fee proposal. When Hot Line had not responded to this message, Plaintiffs sent a follow up message on December 21, 2023 to reiterate this request. Plaintiffs awaited a response from Hot Line, but Hot Line never responded. Regardless, Plaintiffs made a further settlement counteroffer on December 22, 2023. Having received no response, Plaintiffs sent two follow up messages on December 27, 2023 and December 28, 2023. Plaintiffs also sought and secured an extension of the deadline for this fees motion to give Hot Line more time to provide a settlement counterproposal. However, Hot Line has never responded to this proposal. Given the apparent impasse and Court ordered deadline for filing the motion, Plaintiffs have proceeded to file the fees motion. Plaintiffs have expended significant time in doing so, including time spent reviewing time sheet records, including exercising billing judgment and making cuts, preparing this and the other attorney declarations submitted herewith, and drafting the memorandum of points and authorities filed herewith.

### III.  Christopher Sproul's Reasonable 2024 Hourly Rate For Attorney Work

147.  I have 38 years of experience as of the time this Motion is filed. As discussed above, I have extensive experience in environmental litigation, which has earned me a strong reputation for citizen suit expertise. I have set my 2024 hourly rate at $1,055 per hour for the Los Angeles/Orange County area legal market. This rate is commensurate with, even lower than, many rates found reasonable in Central District of California attorneys' fee award decisions for

attorneys with my level of skill, years of experience, and reputation working on cases involving complex civil litigation. In setting my hourly rate, I have reviewed market data and attorney fee awards in cases decided over the past several years involving various types of complex civil litigation in the U.S. District Court for the Central District of California, which are described below.

148.  I further note that the methodology I have employed in setting my 2024 hourly rate is analogous to the methodology that I employed in setting my 2023 hourly rate for the Los Angeles/Orange County metropolitan area that I sought recovery for any fee motion filed in *Inland Empire Waterkeeper, et al., v. Corona Clay Co*., Civ No. 8:18-cv-00333-DOC (DFM) (C.D. Cal). Utilizing this methodology, for purposes of Plaintiffs' motion for attorneys fees and costs in that case, I set my Los Angeles/Orange County metropolitan area rates as $995 per hour. I further set the rates of other lawyers employed by Environmental Advocates as follows: Brian Orion (18 years experience in 2023)--$855 per hour; Stuart Wilcox (11 years of experience in 2023)--$775 per hour; Marla Fox (11 years of experience in 2023)--$775 per hour. I also opined that a reasonable Los Angeles/Orange County 2023 market rate for my co-counsel Jason Flanders was $855 per hour. As reflected in the January 19, 2024 order in *Inland Empire Waterkeeper*, the District Court judge in that case found these hourly rates reasonable and in accord with 2023 prevailing market rates in the Los Angeles/Orange County metropolitan area. I have attached a true and correct copy of this order as Exhibit 13. The Los Angeles metropolitan area market rate that I am presently claiming in the Hot Line matter equates to a 6% increase over the rates that the court awarded me in *Inland Empire Waterkeeper.* As noted below, this 6% increase is commensurate with the latest government data on inflation specific to the legal services sector. (Note: in paragraph 150 below, I recite that I have adjusted the hourly rates awarded in past court decisions from years ago by assumed annual inflation rate of 3% for the limited purpose of opining what past

court decisions would equate to in current dollars. This is not inconsistent with claiming a 6% increase in 2023 rates as compared to 2024 rates given data well establishing a current spike in inflation rates).

149. In the chart below, I have set forth the rates that the Court found reasonable in the representative Central District of California cases that I have relied on as support for my hourly rate and then what those rates would be as an inflation-adjusted 2024 attorney fee rate (assuming a very modest inflation rate of 3%). This is a very conservative inflation assumption; available data suggests that inflation in the legal market has certainly equaled and likely well exceeded 3% in recent years. It is common knowledge that in recent years inflation has increased at records rates, well above 3%. In fact, government data on inflation specific to the legal services sector, *i.e.* attorneys' fees, indicates that hourly rates rose by over 6% from November 2022 to November 2023 (the most recent date for which there is data), an increase of over twice what I have used to conservatively adjust rates in the charts below. *See* https://data.bls.gov/timeseries/PCU5411--5411--?amp%253bdata_tool=XGtable&output_view=data&include_graphs=true (the PPI industry group data for legal services went from 257.63 in November 2022 to 273.104 in November 2023, an increase of over 6%). The average of the historical hourly rates below is $981.80 per hour, before correcting for inflation. Notably, only one of the attorneys in the below examples was more senior than me, and the remaining attorneys were all more junior, some by as much as 13 years. Indeed, one of the cases below provides rates previously found reasonable for me in this Court (awarded twice in that case) for previous years/experience levels, further indicating that this is a conservative dataset to determine the reasonableness my rate. Utilizing the above conservative 3% per year inflation adjustment, the average of the attorney hourly rates from the cases below is $1,091.22 per hour. Even given the conservative nature of this dataset, the conservative inflation adjusted average is notably well above my 2024 rate of $1,055 per hour by $36.22

per hour. Given that I am more senior than the attorneys in all but one of these data points, it would be sensible for my rate to be well above the inflation adjusted average, but I have nonetheless set my rate markedly below this average.

150. Furthermore, as shown in the chart below, my $1,055 per hour rate is less than $50 over the 3% inflation-adjusted rate I was awarded twice two years ago in this Court as a Los Angeles/Orange County rate in *Los Angeles Waterkeeper v. American Reclamation, et al.,* 21-1140, Dkts. 45, 66 (C.D. Cal. April 15, 2022). Correcting this rate by 6% per year, which, as discussed above, appears to be a more realistic correction, actually yields an inflation-corrected 2022 rate for me of $1,067.42, indicating that my rate increases over the last two years have not even kept up with actual inflation in the legal services sector from rates already found reasonable for my work in this Court in the recent past. Indeed, my $1,055 per hour rate is only approximately 6% above my 2023 rate of $995 per hour, *i.e.* consistent with the most recent available data on the rate of inflation for legal services, discussed above, and my 2023 rate increase was even less. That my rate is consistent with these rates that have already been found reasonable for my work, and that I have already been awarded for work in the Los Angeles/Orange County area, is further evidence of the reasonableness of my rate. And, notably, such inflation adjustments would not account for increases in my rate due to increases in my experience, which is further evidence that these rates are not only reasonable, they are conservative.

151. Courts have found significantly larger year over year increases in hourly rates reasonable in the past, both in dollar amounts and percentage increases. *See, e.g., Wb Music Corp. v. Royce Int'l Broad. Corp.,* No. 16-600, 2021 U.S. Dist. LEXIS 193603 (C.D. Cal. May 7, 2021) (finding rates reasonable where attorney Sharon Mayo's rate went from $895.50 in 2020 as a 30-year attorney to $976.50 per hour in 2021 as a 31-year attorney (increase of $81.00, over 9%, in one year) and attorney Laura Watson's rate went from $607.50 in

2020 as a 3-year attorney to $706.50 in 2021 as a 4-year attorney (increase of $99.00, over 16%, in one year)); *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) (finding rates reasonable where attorney Cassandra E. Havens' rate went from $440.00 in 2018 as a 1-year attorney to $508.50 per hour in 2019 as a 2-year attorney to $607.50 in 2020 as a 3-year attorney (increases of $68.50 and $99.00 per year and over 15% and over 19% per year respectively) and attorney Rachel S. Shen's rate went from $400.50 in 2017 as a 1-year attorney to $495.00 per hour in 2018 as a 2-year attorney (an increase of $94.50 (over 23.5%) per year)); *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) (finding rates reasonable where attorney Nathaniel Bach's rate went from $950.00 in 2022 as a 14-year attorney to $1,065.00 per hour in 2023 as a 15-year attorney (an increase of $115.00 (over 12%) per year) and where attorney Christopher Chatham's rate went from $900.00 in 2022 as a 9-year attorney to $1,010.00 per hour in 2023 as a 10-year attorney (an increase of $110.00 (over 12%) per year)); *Aecom Energy & Constr. v. Ripley*, No. 17-5398, 2018 U.S. Dist. LEXIS 173810 (C.D. Cal. Oct. 9, 2018) (finding 2018 rate of $554.00 per hour reasonable for 2-year attorney Yungmoon Chang); *Aecom Energy & Constr., Inc. v. Topolewski*,  No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) (finding 2021 rate of $876.00 per hour reasonable for 5-year attorney Yungmoon Chang (an increase of $322.00 over 3 years for an average increase of $107.33 per year or approximately 16.5% per year when compounded annually from the rate approved for this attorney in 2018)). Both I and my co-counsel in this matter, across the board, have made significantly smaller increases in our rates from 2023 to 2024 than those the Court has found reasonable for other attorneys in other complex civil litigation, which is further evidence of the reasonableness of these 2024 rates.

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2024 | Case Citation |
|---|---|---|---|---|
| Diana Torres (29 years) | $1,116.00 | 2021 | $1,219.48 | *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) |
| Debra Tauger (31 years) | $875.00 | 2020 | $984.82 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| James M. Finberg (37 years) | $980.00 | 2020 | $1,103.00 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |
| Peter Schey (35 years) | $950.00 | 2019 | $1,101.31 | *Flores v. Barr,* No. 85-4544, 2019 U.S. Dist. LEXIS 221981 (C.D. Cal. Nov. 12, 2019) |
| Dale K. Galipo (33 years) | $1,100.00 | 2022 | $1,166.99 | *French v. City of L.A.*, No. 20-00416, 2022 U.S. Dist. LEXIS 111194 (C.D. Cal. May 10, 2022) |
| Larry Jones (40 years) | $915.00 | 2019 | $1,060.74 | *Homegoods, Inc. v. Papanicolaou,* No. 19-06912, 2019 U.S. Dist. |

| | | | | LEXIS 221967 (C.D. Cal. Dec. 4, 2019) |
|---|---|---|---|---|
| Christopher Sproul (36 years) | $950.00 | 2022 | $1,007.86 | *Los Angeles Waterkeeper v. American Reclamation, et al.,* 21-1140, Dkts. 45, 66 |
| Various (25+ years) | $1,060.00 | 2020 | $1,193.04 | *Marshall v. Northrop Grumman Corp.*, No. 16-6794 AB (JCx), 2020 U.S. Dist. LEXIS 177056 (C.D. Cal. Sep. 18, 2020) |
| Sharon D. Mayo (30 years) | $895.50 | 2020 | $1,007.89 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Sharon D. Mayo (31 years) | $976.50 | 2021 | $1,067.05 | *Wb Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2021 U.S. Dist. LEXIS 193603 (C.D. Cal. May 7, 2021) |

1
2
3
4
5
6
7
8

152.  The 28 additional data points in the chart below further support the reasonableness of my rate of $1,055 per hour. The attorneys in these cases all had between 10 and 25 years *less* experience than me, and the Courts found that rates exceeding my rate of $1,055 per hour were reasonable for those attorneys, after conservatively correcting for inflation. Indeed, the Courts found rates exceeding my rate, even without correcting for inflation at all, reasonable for attorneys with as many as 23 years less experience, in other words less than 40% as much experience as I have.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2024 | Case Citation |
|---|---|---|---|---|
| Diana Torres (26 years) | $892.00 | 2018 | $1,065.09 | *Aecom Energy & Constr. v. Ripley*, No. 17-5398, 2018 U.S. Dist. LEXIS 173810 (C.D. Cal. Oct. 9, 2018) |
| Matthew J. Matern (28 years) | $950.00 | 2020 | $1,069.23 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Charles Field (23 years) | $950.00 | 2020 | $1,069.23 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| David Sanford (23 years) | $1,200.00 | 2020 | $1,350.61 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Felicia Medina (14 years) | $950.00 | 2020 | $1,069.23 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Kevin Sharp (27 years) | $1,000.00 | 2020 | $1,125.51 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |

| Matthew J. Matern (28 years) | $950.00 | 2020 | $1,069.23 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |
|---|---|---|---|---|
| Aaron Craig (23 years) | $1,100.00 | 2022 | $1,166.99 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Anne Voigts (20 years) | $1,005.00 | 2022 | $1,066.20 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Heather Banuelos (22 years) | $1,000.00 | 2022 | $1,060.90 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Jeffrey Bucholtz (26 years) | $1,295.00 | 2022 | $1,373.87 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Jeffrey Bucholtz (23 years) | $1,045.00 | 2019 | $1,211.44 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Joseph N. Akrotirianakis (24 years) | $1,120.00 | 2022 | $1,188.21 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |

| Lisa Dwyer (21 years) | $1,040.00 | 2022 | $1,103.34 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Joseph Cohen (28 years) | $935.00 | 2019 | $1,083.92 | *Jiangchen v. Rentech, Inc.,* No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Joshua Konecky (23 years) | $925.00 | 2019 | $1,072.33 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Joshua Konecky (24 years) | $1,005.00 | 2020 | $1,131.14 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Joshua Konecky (25 years) | $1,005.00 | 2021 | $1,098.19 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Joshua Konecky (26 years) | $1,105.00 | 2022 | $1,172.29 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Joshua Konecky (27 years) | $1,105.00 | 2023 | $1,138.15 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Various (15-24 years) | $950.00 | 2020 | $1,069.23 | *Marshall v. Northrop Grumman Corp.*, No. 16-6794 AB (JCx), 2020 U.S. Dist. LEXIS 177056 (C.D. Cal. Sep. 18, 2020) |

| Edward Moss (14 years) | $975.00 | 2018 | $1,164.20 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
|---|---|---|---|---|
| Edward Moss (13 years) | $925.00 | 2017 | $1,137.63 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Andrew Soukup (13 years) | $975.00 | 2021 | $1,065.41 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Benjamin Razi (20 years) | $1,130.00 | 2020 | $1,271.82 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Benjamin Razi (21 years) | $1,170.00 | 2021 | $1,278.49 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |

153.   Furthermore, I have reviewed the rates that my co-counsel from Morrison & Foerster LLP in another matter in this Court charge and are paid by paying clients in the Central District of California and note that their rates are well above my rate, even for attorneys with much less experience than me. Attached as Exhibit 6 is a true and correct copy of a declaration filed by William Frentzen of Morrison & Foerster LLP, my co-counsel in the other case (*Inland Empire Waterkeeper v. Corona Clay Co.*, 18-333 (C.D. Cal.)), who has 10 years less experience than me and is charging $1,500.00 per hour as a 2023 market rate in the Los Angeles/Orange County market. This is further support for the reasonableness of my rate, and indeed of a much higher rate, for my work. *See, e.g., Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) ("billing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.") (citations and internal punctuation omitted). Also, given that this applies across the board to attorneys of all experience levels addressed in this Declaration, the rates charged and paid by paying clients in the Central District of California to my co-counsel at Morrison & Foerster LLP in this other matter support the reasonableness of the other attorneys' hourly rates addressed in this Declaration as well. *See id.*; *see also* Exhibit 7 (declaration of Matthew Robinson of Morrison & Foerster LLP indicating that his 2023 rate is $900 per hour as a 3-year attorney); Exhibit 8 (declaration of William Baker of Morrison & Foerster LLP indicating that his 2023 rate is $710 per hour as a 1-year attorney); Exhibit 9 (declaration of Michael Felmar of Morrison & Foerster LLP indicating that his 2023 paralegal rate is $485 per hour as a paralegal with 29 years of experience).

## IV.   Julie Kaplan's Reasonable 2024 Hourly Rate For Attorney Work.

Julie Kaplan has 38 years of experience as of the time this Motion is filed, the same number of years of experience as I have. I have worked closely with Ms.

Kaplan as co-counsel on several cases over the last few years. Based on my experience working with her, I am well aware that her work is of excellent quality and she has extensive expertise in environmental citizen suit litigation—as is further reflected in her declaration in support of this Motion. I am further aware from talking with colleagues that Ms. Kaplan enjoys a reputation for environmental citizen suit expertise, as reflected in numerous successful citizen suit case outcomes. I am aware that Ms. Kaplan has set her 2024 rate for the Los Angeles/Orange County area legal market at $1,055 per hour. As with my own hourly rate, given that I have the same number of years of experience, it is my opinion that Ms. Kaplan's hourly rate of $1,055 per hour is an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of her level of skill, years of experience, and reputation for environmental law expertise. As discussed above with regard to my own rate, this rate is commensurate with, even lower than, rates found reasonable in Central District of California attorneys' fee award decisions for attorneys with her level of skill, experience, and reputation working on cases involving complex civil litigation. In evaluating these hourly rates, I have reviewed the same market data and attorney fee awards in cases decided over the past several years involving various types of complex civil litigation in the Central District of California that I reviewed in setting my own rate. These data points provide the same support for Ms. Kaplan's rate as they do for my own rate, and I incorporate that analysis and the case citations in support here rather than restating them.

### V.   Fredric Evenson's Reasonable 2024 Hourly Rate For Attorney Work.

154.  Fredric Evenson has 26 years of experience as of the time this Motion is filed. I have worked closely with Mr. Evenson as co-counsel on numerous matters regularly for almost two decades. Based on my years of experience working with him, I am well aware that his work is of excellent quality and he has

extensive expertise in environmental citizen suit litigation—as is further reflected in his declaration in support of this Motion. I am further aware from talking with colleagues that Mr. Evenson enjoys a reputation for environmental citizen suit expertise, as reflected in numerous successful citizen suit case outcomes. I am aware that Mr. Evenson has set his 2024 rate for the Los Angeles/Orange County area legal market at $965 per hour. It is my opinion that Mr. Evenson's hourly rate of $965 per hour is an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of his level of skill, years of experience, and reputation for environmental law expertise. This rate is commensurate with, even lower than, rates found reasonable in Central District of California attorneys' fee award decisions for attorneys with his level of skill, experience, and reputation working on cases involving complex civil litigation. In evaluating his hourly rate, I have reviewed market data and attorney fee awards in cases decided over the past several years involving various types of complex civil litigation in the U.S. District Court for the Central District of California, which are described below.

155.  In the chart below, I have set forth the rates that the Court found reasonable in the representative Central District of California cases that support the reasonableness of Mr. Evenson's hourly rate and then what those rates would be as an inflation-adjusted 2024 attorney fee rate (as discussed above, I have utilized a very conservative 3% per year inflation value that likely underestimates actual attorney fee inflation over the relevant period). The average of these historical rates is $971.91 per hour, before correcting for inflation. Utilizing a 3% per year inflation adjustment, the average of the attorney hourly rates from the cases below is $1,093.89 per hour. Mr. Evenson's $965 per hour rate is less than the unadjusted figure and is almost $130 per hour less than the conservatively adjusted figure. Given the relationship of Mr. Evenson's $965 per hour rate to these figures, his rate is not only reasonable, it is in my opinion even somewhat

less than the prevailing market rate in 2024 for an attorney of his experience, skill, and reputation in the Central District of California.

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2023 | Case Citation |
|---|---|---|---|---|
| James Chadwick (28 years) | $775.00 | 2019 | $898.44 | *Abbas v. Vertical Entm't, LLC,* No. 18-7399, 2019 U.S. Dist. LEXIS 181056 (C.D. Cal. Oct. 18, 2019) |
| Diana Torres (26 years) | $892.00 | 2018 | $1,065.09 | *Aecom Energy & Constr. v. Ripley,* No. 17-5398, 2018 U.S. Dist. LEXIS 173810 (C.D. Cal. Oct. 9, 2018) |
| Diana Torres (29 years) | $1,116.00 | 2021 | $1,219.48 | *Aecom Energy & Constr. v. Ripley,* No. 17-5398, 2018 U.S. Dist. LEXIS 173810 (C.D. Cal. Oct. 9, 2018) |
| Matthew J. Matern (28 years) | $950.00 | 2020 | $1,069.23 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Mikael Stahle (24 years) | $875.00 | 2020 | $984.82 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |

| Scott Brooks (28 years) | $850.00 | 2020 | $956.68 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
|---|---|---|---|---|
| Charles Field (23 years) | $950.00 | 2020 | $1,069.23 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| David Sanford (23 years) | $1,200.00 | 2020 | $1,350.61 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Kevin Sharp (27 years) | $1,000.00 | 2020 | $1,125.51 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Matthew J Matern (26 years) | $850.00 | 2018 | $1,014.94 | *Edwards v. Chartwell Staffing Servs.*, No. 16-9187, 2018 U.S. Dist. LEXIS 234700 (C.D. Cal. Aug. 27, 2018) |
| Matthew J. Matern (28 years) | $950.00 | 2020 | $1,069.23 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |
| Scott A. Brooks (28 years) | $850.00 | 2020 | $956.68 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |
| Aaron Craig (23 years) | $1,100.00 | 2022 | $1,166.99 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |

| | | | | |
|---|---|---|---|---|
| Jeffrey Bucholtz (23 years) | $1,045.00 | 2019 | $1,211.44 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Jeffrey Bucholtz (26 years) | $1,295.00 | 2022 | $1,373.87 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Joseph N. Akrotirianakis (25 years) | $1,120.00 | 2022 | $1,188.21 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Joseph Cohen (28 years) | $935.00 | 2019 | $1,083.92 | *Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Joshua Konecky (23 years) | $925.00 | 2019 | $1,072.33 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Joshua Konecky (24 years) | $1,005.00 | 2020 | $1,131.14 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Joshua Konecky (25 years) | $1,005.00 | 2021 | $1,098.19 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Joshua Konecky (26 years) | $1,105.00 | 2022 | $1,172.29 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |

| | | | | |
|---|---|---|---|---|
| Joshua Konecky (27 years) | $1,105.00 | 2023 | $1,138.15 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Various (15-24 years) | $950.00 | 2020 | $1,069.23 | *Marshall v. Northrop Grumman Corp.*, No. 16-6794 AB (JCx), 2020 U.S. Dist. LEXIS 177056 (C.D. Cal. Sep. 18, 2020) |
| Various (25+ years) | $1,060.00 | 2020 | $1,193.04 | *Marshall v. Northrop Grumman Corp.*, No. 16-6794 AB (JCx), 2020 U.S. Dist. LEXIS 177056 (C.D. Cal. Sep. 18, 2020) |
| Sharon D. Mayo (26 years) | $742.50 | 2016 | $940.58 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Sharon D. Mayo (27 years) | $778.50 | 2017 | $957.46 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Sharon D. Mayo (28 years) | $778.50 | 2018 | $929.57 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Sharon D. Mayo (29 years) | $828.00 | 2019 | $959.88 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |

| | | | | |
|---|---|---|---|---|
| Kristin A. Linsley (28 years) | $1,150.00 | 2021 | $1,256.64 | *Woodhouse v. United States Gov't*, No. 21-06372, 2021 U.S. Dist. LEXIS 249920 (C.D. Cal. Dec. 31, 2021) |

156.  The 25 additional data points in the chart below further support the reasonableness of Mr. Evenson's rate of $965 per hour. The attorneys in these cases had between 4 and 19 years less experience than Mr. Evenson, and the Courts found that rates exceeding his rate of $965 per hour were reasonable for those attorneys, after conservatively correcting for inflation. Indeed, the Courts found rates exceeding Mr. Evenson's rate, even without correcting for inflation at all, reasonable for attorneys with as many as 16 years less experience (*i.e.* over 60% less experience).

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2024 | Case Citation |
|---|---|---|---|---|
| Felicia Medina (14 years) | $950.00 | 2020 | $1,069.23 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Eileen Goldsmith (20 years) | $860.00 | 2020 | $967.94 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |
| Amanda Farfel (10 years) | $950.00 | 2022 | $1,007.86 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Lisa Dwyer (18 years) | $870.00 | 2019 | $1,008.57 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Aaron Craig (20 years) | $895.00 | 2019 | $1,037.55 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |

| | | | | |
|---|---|---|---|---|
| Anne Voigts (20 years) | $1,005.00 | 2022 | $1,066.20 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Joseph N. Akrotirianakis (21 years) | $895.00 | 2019 | $1,037.55 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Lisa Dwyer (21 years) | $1,040.00 | 2022 | $1,103.34 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Heather Banuelos (22 years) | $1,000.00 | 2022 | $1,060.90 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Ex Kano Sams (22 years) | $850.00 | 2019 | $985.38 | *Jiangchen v. Rentech, Inc.,* No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Chris Pacetti (18 years) | $935.00 | 2022 | $991.94 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Matthew Murphy (7 years) | $810.00 | 2017 | $996.20 | *McAllister v. St. Louis Rams, LLC,* No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |

| | | | | |
|---|---|---|---|---|
| Matthew Murphy (8 years) | $875.00 | 2018 | $1,044.80 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Edward Moss (13 years) | $925.00 | 2017 | $1,137.63 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Edward Moss (14 years) | $975.00 | 2018 | $1,164.20 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Andrew Soukup (12 years) | $935.00 | 2020 | $1,052.35 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Andrew Soukup (13 years) | $975.00 | 2021 | $1,065.41 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Ryan Weinstein (15 years) | $875.00 | 2020 | $984.82 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |

| | | | | |
|---|---|---|---|---|
| Ryan Weinstein (16 years) | $915.00 | 2021 | $999.85 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Benjamin Razi (20 years) | $1,130.00 | 2020 | $1,271.82 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Benjamin Razi (21 years) | $1,170.00 | 2021 | $1,278.49 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Christopher Chatham (10 years) | $1,010.00 | 2023 | $1,040.30 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Nathaniel Bach (14 years) | $950.00 | 2022 | $1,007.86 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Sarah Moses (15 years) | $1,000.00 | 2023 | $1,030.00 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |

| Nathaniel Bach (15 years) | $1,065.00 | 2023 | $1,096.95 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |

**VI.   Matthew Maclear's Reasonable 2024 Hourly Rate For Attorney Work.**

157.   Matthew Maclear has 24 years of experience as of the time this Motion is filed. I have worked closely with Mr. Maclear as co-counsel on several matters over the last few years. Based on my years of experience working with him, I am well aware that his work is of excellent quality and he has extensive expertise in environmental citizen suit litigation—as is further reflected in his declaration in support of this Motion. I am further aware from talking with colleagues that Mr. Maclear enjoys a reputation for environmental citizen suit expertise, as reflected in numerous successful citizen suit case outcomes. I am aware that Aqua Terra Aeris has set Mr. Maclear's 2024 hourly rate for the Los Angeles/Orange County area legal market at $950 per hour. It is my opinion that Mr. Maclear's hourly rate of $950 per hour is an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of his level of skill, years of experience, and reputation for environmental law expertise. This rate is commensurate with, even lower than, rates found reasonable in Central District of California attorneys' fee award decisions for attorneys with his level of skill, experience, and reputation working on cases involving complex civil litigation. In evaluating his hourly rate, I have reviewed market data and attorney fee awards in cases decided over the past several years involving various types of complex civil litigation in the U.S. District Court for the Central District of California, which are described below.

158.   In the chart below, I have set forth the rates that the Court found reasonable in the representative Central District of California cases that support the reasonableness of Mr. Maclear's hourly rate and then what those rates would be as an inflation-adjusted 2024 attorney fee rate (as discussed above, I have utilized a very conservative 3% per year inflation value that likely underestimates actual attorney fee inflation over the relevant period). The average of these

historical rates is $998.31 per hour, before correcting for inflation. Utilizing a 3% per year inflation adjustment, the average of the attorney hourly rates from the cases below is $1,119.35 per hour. These figures are notably well above Mr. Maclear's rate of $950 per hour (for example, the conservatively adjusted figure is $169.35 over Mr. Maclear's rate). Given that his $950 per hour rate is well below these figures, his rate is not only reasonable, it is in my opinion even somewhat less than the prevailing market rate in 2024 for an attorney of his experience, skill, and reputation in the Central District of California.

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2024 | Case Citation |
|---|---|---|---|---|
| Diana Torres (26 years) | $892.00 | 2018 | $1,065.09 | *Aecom Energy & Constr. v. Ripley*, No. 17-5398, 2018 U.S. Dist. LEXIS 173810 (C.D. Cal. Oct. 9, 2018) |
| Mikael Stahle (24 years) | $875.00 | 2020 | $984.82 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Charles Field (23 years) | $950.00 | 2020 | $1,069.23 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| David Sanford (23 years) | $1,200.00 | 2020 | $1,350.61 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Matthew J Matern (26 years) | $850.00 | 2018 | $1,014.94 | *Edwards v. Chartwell Staffing Servs.,* No. 16-9187, 2018 U.S. Dist. LEXIS 234700 (C.D. Cal. Aug. 27, 2018) |

| | | | | |
|---|---|---|---|---|
| Heather Banuelos (22 years) | $1,000.00 | 2022 | $1,060.90 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Aaron Craig (23 years) | $1,100.00 | 2022 | $1,166.99 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Joseph N. Akrotirianakis (24 years) | $1,120.00 | 2022 | $1,188.21 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Jeffrey Bucholtz (26 years) | $1,295.00 | 2022 | $1,373.87 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Ex Kano Sams (22 years) | $850.00 | 2019 | $985.38 | *Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Joshua Konecky (23 years) | $925.00 | 2019 | $1,072.33 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Joshua Konecky (24 years) | $1,005.00 | 2020 | $1,131.14 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |

| Joshua Konecky (25 years) | $1,005.00 | 2021 | $1,098.19 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
|---|---|---|---|---|
| Joshua Konecky (26 years) | $1,105.00 | 2022 | $1,172.29 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Various (15-24 years) | $950.00 | 2020 | $1,069.23 | *Marshall v. Northrop Grumman Corp.*, No. 16-6794 AB (JCx), 2020 U.S. Dist. LEXIS 177056 (C.D. Cal. Sep. 18, 2020) |
| Various (25+ years) | $1,060.00 | 2020 | $1,193.04 | *Marshall v. Northrop Grumman Corp.*, No. 16-6794 AB (JCx), 2020 U.S. Dist. LEXIS 177056 (C.D. Cal. Sep. 18, 2020) |
| Jeffrey Bucholtz (23 years) | $1,045.00 | 2019 | $1,211.44 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Sharon D. Mayo (26 years) | $742.50 | 2016 | $940.58 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

159.  The 32 additional data points in the chart below further support the reasonableness of Mr. Maclear's rate of $950 per hour. The attorneys in these cases had between 3 and 19 years less experience than Mr. Maclear, and the Courts found that rates exceeding his rate of $950 per hour were reasonable for those attorneys, after conservatively correcting for inflation. Indeed, the Courts found rates exceeding Mr. Maclear's rate, even without correcting for inflation at all, reasonable for attorneys with as many as 14 years less experience (*i.e.* almost 60% less experience).

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2024 | Case Citation |
|---|---|---|---|---|
| Yungmoon Chang (5 years) | $876.00 | 2021 | $957.23 | *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) |
| Russell Kornblith (7 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Matthew Murphy (7 years) | $810.00 | 2017 | $996.20 | *McAllister v. St. Louis Rams, LLC,* No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Matthew Murphy (8 years) | $875.00 | 2018 | $1,044.80 | *McAllister v. St. Louis Rams, LLC,* No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Christopher Chatham (9 years) | $900.00 | 2022 | $954.81 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |

| | | | | |
|---|---|---|---|---|
| Amanda Farfel (10 years) | $950.00 | 2022 | $1,007.86 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Christopher Chatham (10 years) | $1,010.00 | 2023 | $1,040.30 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Andrew Soukup (12 years) | $935.00 | 2020 | $1,052.35 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Andrew Soukup (13 years) | $975.00 | 2021 | $1,065.41 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Edward Moss (13 years) | $925.00 | 2017 | $1,137.63 | *McAllister v. St. Louis Rams, LLC,* No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Nathaniel Bach (14 years) | $950.00 | 2022 | $1,007.86 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |

| Felicia Medina (14 years) | $950.00 | 2020 | $1,069.23 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
|---|---|---|---|---|
| Edward Moss (14 years) | $975.00 | 2018 | $1,164.20 | *McAllister v. St. Louis Rams, LLC,* No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Michael Palmer (15 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Ryan Weinstein (15 years) | $875.00 | 2020 | $984.82 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Sarah Moses (15 years) | $1,000.00 | 2023 | $1,030.00 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Nathaniel Bach (15 years) | $1,065.00 | 2023 | $1,096.95 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Andrew Melzer (16 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |

| Ryan Weinstein (16 years) | $915.00 | 2021 | $999.85 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Andrew Sokolowski (17 years) | $850.00 | 2020 | $956.68 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Launa Adolf (17 years) | $850.00 | 2020 | $956.68 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Chris Pacetti (18 years) | $935.00 | 2022 | $991.94 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Lisa Dwyer (18 years) | $870.00 | 2019 | $1,008.57 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Chris Pacetti (19 years) | $935.00 | 2023 | $963.05 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Jesus E. Cuza (20 years) | $845.00 | 2020 | $951.05 | *125916 Ont. Ltd. v. Kagan*, No. 20-02630, 2020 U.S. Dist. LEXIS 227111 (C.D. Cal. Nov. 16, 2020) |
| Eileen Goldsmith (20 years) | $860.00 | 2020 | $967.94 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |

| Aaron Craig (20 years) | $895.00 | 2019 | $1,037.55 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
|---|---|---|---|---|
| Anne Voigts (20 years) | $1,005.00 | 2022 | $1,066.20 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Benjamin Razi (20 years) | $1,130.00 | 2020 | $1,271.82 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Joseph N. Akrotirianakis (21 years) | $895.00 | 2019 | $1,037.55 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Lisa Dwyer (21 years) | $1,040.00 | 2022 | $1,103.34 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Benjamin Razi (21 years) | $1,170.00 | 2021 | $1,278.49 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |

**VII.   Jodene Isaacs' Reasonable 2024 Hourly Rate For Attorney Work.**

160.  Jodene Isaacs has 21 years of experience as of the time this Motion is filed. I have worked with Ms. Isaacs for over 15 years. Based on my experience working with her, I am well aware that her work is of excellent quality and she has extensive expertise in environmental citizen suit litigation—as is further reflected in her declaration in support of this Motion. I am further aware from talking with colleagues that Ms. Isaacs enjoys a reputation for environmental citizen suit expertise, as reflected in numerous successful citizen suit case outcomes. I am aware that Ms. Isaacs has set her 2024 rate for the Los Angeles/Orange County area legal market at $925 per hour. It is my opinion that Ms. Isaacs' hourly rate of $925 per hour is an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of her level of skill, years of experience, and reputation for environmental law expertise. This rate is commensurate with, even lower than, rates found reasonable in Central District of California attorneys' fee award decisions for attorneys with her level of skill, experience, and reputation working on cases involving complex civil litigation. In evaluating her hourly rate, I have reviewed market data and attorney fee awards in cases decided over the past several years involving various types of complex civil litigation in the U.S. District Court for the Central District of California, which are described below.

161.  In the chart below, I have set forth the rates that the Court found reasonable in the representative Central District of California cases that support the reasonableness of Ms. Isaacs' hourly rate and then what those rates would be as an inflation-adjusted 2024 attorney fee rate (as discussed above, I have utilized a very conservative 3% per year inflation value that likely underestimates actual attorney fee inflation over the relevant period). The average of these historical rates is $961.74 per hour, before correcting for inflation. Utilizing a 3% per year inflation adjustment, the average of the attorney hourly rates from the cases below

is $1,068.69 per hour. These figures are notably well above Ms. Isaacs' rate of $925 per hour, the unadjusted figure is $36.74 above Ms. Isaacs' rate and the adjusted figure is over $140 over Ms. Isaacs' rate. Given that Ms. Isaacs' $925 per hour rate is far below these figures, her rate is not only reasonable, it is in my opinion even less than the prevailing market rate in 2024 for an attorney of her experience, skill, and reputation in the Central District of California.

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2023 | Case Citation |
|---|---|---|---|---|
| Jesus E. Cuza (20 years) | $845.00 | 2020 | $951.05 | *125916 Ont. Ltd. v. Kagan*, No. 20-02630, 2020 U.S. Dist. LEXIS 227111 (C.D. Cal. Nov. 16, 2020) |
| Max Sloves (19 years) | $675.00 | 2020 | $759.72 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Mikael Stahle (24 years) | $875.00 | 2020 | $984.82 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Charles Field (23 years) | $950.00 | 2020 | $1,069.23 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| David Sanford (23 years) | $1,200.00 | 2020 | $1,350.61 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Eileen Goldsmith (20 years) | $860.00 | 2020 | $967.94 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |

| Anne Voigts (20 years) | $1,005.00 | 2022 | $1,066.20 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
|---|---|---|---|---|
| Lisa Dwyer (21 years) | $1,040.00 | 2022 | $1,103.34 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Heather Banuelos (22 years) | $1,000.00 | 2022 | $1,060.90 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Aaron Craig (23 years) | $1,100.00 | 2022 | $1,166.99 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Joseph N. Akrotirianakis (24 years) | $1,120.00 | 2022 | $1,188.21 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Corey D. Holzer (21 years) | $795.00 | 2019 | $921.62 | *Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Ex Kano Sams (22 years) | $850.00 | 2019 | $985.38 | *Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |

| | | | | |
|---|---|---|---|---|
| Chris Pacetti (18 years) | $935.00 | 2022 | $991.94 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Chris Pacetti (19 years) | $935.00 | 2023 | $963.05 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Joshua Konecky (23 years) | $925.00 | 2019 | $1,072.33 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Joshua Konecky (24 years) | $1,005.00 | 2020 | $1,131.14 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Benjamin Razi (20 years) | $1,130.00 | 2020 | $1,271.82 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Lisa Dwyer (18 years) | $870.00 | 2019 | $1,008.57 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Aaron Craig (20 years) | $895.00 | 2019 | $1,037.55 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |

| Joseph N. Akrotirianakis (21 years) | $895.00 | 2019 | $1,037.55 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Jeffrey Bucholtz (23 years) | $1,045.00 | 2019 | $1,211.44 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Benjamin Razi (21 years) | $1,170.00 | 2021 | $1,278.49 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |

1

2      162.  The 26 additional data points in the chart below further support the

3  reasonableness of Ms. Isaacs' rate of $925 per hour. The attorneys in these cases

4  had between 4-16 years less experience than Ms. Isaacs, and the Courts found that

5  rates exceeding her rate of $925 per hour were reasonable for those attorneys,

6  after conservatively correcting for inflation. Indeed, the Courts found rates

7  exceeding Ms. Isaacs' rate, even without correcting for inflation at all, reasonable

8  for attorneys with as many as 11 years less experience (*i.e.* approximately half as

9  much experience).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2023 | Case Citation |
|---|---|---|---|---|
| Michael Kahn (16 years) | $790.00 | 2018 | $943.30 | *3M Co. v. Phx. Auto. Refinishing Co.*, No. 17-00649, 2018 U.S. Dist. LEXIS 70589 (C.D. Cal. Apr. 25, 2018) |
| Yungmoon Chang (5 years) | $876.00 | 2021 | $957.23 | *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) |
| Andrew Sokolowski (17 years) | $850.00 | 2020 | $956.68 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Launa Adolf (17 years) | $850.00 | 2020 | $956.68 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Russell Kornblith (7 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |

| | | | | |
|---|---|---|---|---|
| Felicia Medina (14 years) | $950.00 | 2020 | $1,069.23 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Michael Palmer (15 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Andrew Melzer (16 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Eric Brown (12 years) | $825.00 | 2020 | $928.54 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |
| Amanda Farfel (10 years) | $950.00 | 2022 | $1,007.86 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Leslie Joyner (10 years) | $800.00 | 2019 | $927.42 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Leslie Joyner (11 years) | $830.00 | 2020 | $934.17 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Various (15-24 years) | $950.00 | 2020 | $1,069.23 | *Marshall v. Northrop Grumman Corp.*, No. 16-6794 AB (JCx), 2020 U.S. Dist. LEXIS 177056 (C.D. Cal. Sep. 18, 2020) |

| Matthew Murphy (7 years) | $810.00 | 2017 | $996.20 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
|---|---|---|---|---|
| Matthew Murphy (8 years) | $875.00 | 2018 | $1,044.80 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Edward Moss (13 years) | $925.00 | 2017 | $1,137.63 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Edward Moss (14 years) | $975.00 | 2018 | $1,164.20 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Andrew Soukup (12 years) | $935.00 | 2020 | $1,052.35 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Andrew Soukup (13 years) | $975.00 | 2021 | $1,065.41 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |

| Ryan Weinstein (15 years) | $875.00 | 2020 | $984.82 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
|---|---|---|---|---|
| Ryan Weinstein (16 years) | $915.00 | 2021 | $999.85 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Christopher Chatham (9 years) | $900.00 | 2022 | $954.81 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Christopher Chatham (10 years) | $1,010.00 | 2023 | $1,040.30 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Nathaniel Bach (14 years) | $950.00 | 2022 | $1,007.86 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Sarah Moses (15 years) | $1,000.00 | 2023 | $1,030.00 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |

| Nathaniel Bach (15 years) | $1,065.00 | 2023 | $1,096.95 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |

## VIII.  Brian Orion's Reasonable 2024 Hourly Rate For Attorney Work.

163.  Brian Orion has 19 years of experience as of the time this Motion is filed. I have worked closely with Mr. Orion in a supervisory relationship for many years. Based on my years of experience working with him, I am well aware that his work is of excellent quality and he has extensive expertise in environmental citizen suit litigation—as is further reflected in his declaration in support of this Motion. I am further aware from talking with colleagues that Mr. Orion enjoys a reputation for environmental citizen suit expertise, as reflected in numerous successful citizen suit case outcomes. As his supervisor, I have set Mr. Orion's hourly rate at $910 per hour as an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of his level of skill, years of experience, and reputation for environmental law expertise. This rate is commensurate with, even lower than, rates found reasonable in Central District of California attorneys' fee award decisions for attorneys with his level of skill, experience, and reputation working on cases involving complex civil litigation. In evaluating these hourly rates, I have reviewed market data and attorney fee awards in cases decided over the past several years involving various types of complex civil litigation in the U.S. District Court for the Central District of California, which are described below.

164.  In the chart below, I have set forth the rates that the Court found reasonable in the representative Central District of California cases that I have relied on as support for Mr. Orion's hourly rate and then what those rates would be as an inflation-adjusted 2024 attorney fee rate (as discussed above, I have utilized a very conservative 3% per year inflation value that likely underestimates actual attorney fee inflation over the relevant period). The average of these historical rates is $910.29 per hour, before correcting for inflation. Utilizing a 3% per year inflation adjustment, the average of the attorney hourly rates from the cases below is $1,014.11 per hour. The unadjusted figure is almost identical to

1  (slightly more than) Mr. Orion's rate of $910 per hour, and the adjusted figure is

2  over $100.00 more than Mr. Orion's rate. Given the relation of his $910 per hour

3  rate to these figures, Mr. Orion's rate is not only reasonable, it is in my opinion

4  even less than the prevailing market rate in 2024 for an attorney of his experience,

5  skill, and reputation in the Central District of California.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2024 | Case Citation |
|---|---|---|---|---|
| Jesus E. Cuza (20 years) | $845.00 | 2020 | $951.05 | *125916 Ont. Ltd. v. Kagan*, No. 20-02630, 2020 U.S. Dist. LEXIS 227111 (C.D. Cal. Nov. 16, 2020) |
| Andrew Sokolowski (17 years) | $850.00 | 2020 | $956.68 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Launa Adolf (17 years) | $850.00 | 2020 | $956.68 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Max Sloves (19 years) | $675.00 | 2020 | $759.72 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Eileen Goldsmith (20 years) | $860.00 | 2020 | $967.94 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |

| | | | | |
|---|---|---|---|---|
| Anne Voigts (20 years) | $1,005.00 | 2022 | $1,066.20 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Lisa Dwyer (21 years) | $1,040.00 | 2022 | $1,103.34 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Lisa Dwyer (18 years) | $870.00 | 2019 | $1,008.57 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Aaron Craig (20 years) | $895.00 | 2019 | $1,037.55 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Joseph N. Akrotirianakis (21 years) | $895.00 | 2019 | $1,037.55 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Stanislav Karas (17 years) | $775.00 | 2019 | $898.44 | *Jiangchen v. Rentech, Inc.,* No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Corey D. Holzer (21 years) | $795.00 | 2019 | $921.62 | *Jiangchen v. Rentech, Inc.,* No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |

| Chris Pacetti (18 years) | $935.00 | 2022 | $991.94 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
|---|---|---|---|---|
| Chris Pacetti (19 years) | $935.00 | 2023 | $963.05 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Various (15-24) | $950.00 | 2020 | $1,069.23 | *Marshall v. Northrop Grumman Corp.*, No. 16-6794 AB (JCx), 2020 U.S. Dist. LEXIS 177056 (C.D. Cal. Sep. 18, 2020) |
| Benjamin Razi (20 years) | $1,130.00 | 2020 | $1,271.82 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Benjamin Razi (21 years) | $1,170.00 | 2021 | $1,278.49 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |

165.  The 24 additional data points in the chart below further support the reasonableness of Mr. Orion's rate of $910 per hour. The attorneys in these cases had between 3-16 years less experience than Mr. Orion, and the Courts found that rates exceeding his rate of $910 per hour were reasonable for those attorneys, after conservatively correcting for inflation. Indeed, the Courts found rates exceeding Mr. Orion's rate, even without correcting for inflation at all, reasonable for attorneys with as many as 9 years less experience (*i.e.*, approximately half as much experience).

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2024 | Case Citation |
|---|---|---|---|---|
| Michael Kahn (16 years) | $790.00 | 2018 | $943.30 | *3M Co. v. Phx. Auto. Refinishing Co.*, No. 17-00649, 2018 U.S. Dist. LEXIS 70589 (C.D. Cal. Apr. 25, 2018) |
| Yungmoon Chang (5 years) | $876.00 | 2021 | $957.23 | *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) |
| Russell Kornblith (7 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Felicia Medina (14 years) | $950.00 | 2020 | $1,069.23 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Michael Palmer (15 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |

| Andrew Melzer (16 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
|---|---|---|---|---|
| Eric Brown (12 years) | $825.00 | 2020 | $928.54 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |
| Amanda Farfel (10 years) | $950.00 | 2022 | $1,007.86 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Leslie Joyner (10 years) | $800.00 | 2019 | $927.42 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Leslie Joyner (11 years) | $830.00 | 2020 | $934.17 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Stephanie Drotar (3 years) | $770.00 | 2018 | $919.42 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Matthew Murphy (8 years) | $875.00 | 2018 | $1,044.80 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Edward Moss (14 years) | $975.00 | 2018 | $1,164.20 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |

| Matthew Murphy (7 years) | $810.00 | 2017 | $996.20 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
|---|---|---|---|---|
| Edward Moss (13 years) | $925.00 | 2017 | $1,137.63 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Andrew Soukup (12 years) | $935.00 | 2020 | $1,052.35 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Andrew Soukup (13 years) | $975.00 | 2021 | $1,065.41 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Ryan Weinstein (15 years) | $875.00 | 2020 | $984.82 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Ryan Weinstein (16 years) | $915.00 | 2021 | $999.85 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Christopher Chatham (9 years) | $900.00 | 2022 | $954.81 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |

| Christopher Chatham (10 years) | $1,010.00 | 2023 | $1,040.30 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
|---|---|---|---|---|
| Nathaniel Bach (14 years) | $950.00 | 2022 | $1,007.86 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Sarah Moses (15 years) | $1,000.00 | 2023 | $1,030.00 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Nathaniel Bach (15 years) | $1,065.00 | 2023 | $1,096.95 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |

### IX.    Jason Flanders' Reasonable 2024 Hourly Rate For Attorney Work.

166.  Jason Flanders has 19 years of experience as of the time this Motion is filed, the same amount of experience as Mr. Orion, discussed above. I have worked closely with Mr. Flanders as co-counsel on numerous matters for over a decade. Based on my years of experience working with him, I am well aware that his work is of excellent quality and he has extensive expertise in environmental citizen suit litigation—as is further reflected in his declaration in support of this Motion. I am further aware from talking with colleagues that Mr. Flanders enjoys a reputation for environmental citizen suit expertise, as reflected in numerous successful citizen suit case outcomes.

167.  In addition, in paragraph 14 of Exhibit 10 attached hereto (the aforementioned declaration submitted by Daniel Cooper on a motion for attorneys' fees in another case), Mr. Cooper attests to the skill and reputation of Mr. Flanders, noting that based on his long-standing working relationship with Mr. Flanders, he believes, among other things, that Mr. Flanders is an "extremely effective environmental litigator" who "has demonstrated the highest levels of competence I have experienced in my law practice."

168.  In addition, in paragraph 15 of Exhibit 11 attached hereto (the aforementioned declaration submitted by Drevet Hunt on a motion for attorneys' fees in another case), Mr. Hunt attests that, based on his roughly 15-year working relationship with Mr. Flanders, he knows Mr. Flanders to be a "highly skilled litigator" with "a reputation for environmental citizen suit expertise . . . ."

169.  I am aware that Mr. Flanders' firm Aqua Terra Aeris Law Group has set his 2024 rate for the Los Angeles/Orange County area legal market at $910 per hour. As with Mr. Orion, who has the same amount of experience, it is my opinion that Mr. Flanders' hourly rate of $910 per hour is an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of his level of skill, years of experience, and reputation for environmental law

expertise. As discussed above with regard to Mr. Orion, this rate is commensurate with, even lower than, rates found reasonable in Central District of California attorneys' fee award decisions for attorneys with his level of skill, experience, and reputation working on cases involving complex civil litigation. In evaluating these hourly rates, I have reviewed the same market data and attorney fee awards in cases decided over the past several years involving various types of complex civil litigation in the Central District of California that I reviewed in setting Mr. Orion's rate. These data points provide the same support for Mr. Flanders' rate as they do for Mr. Orion's rate, and I incorporate that analysis and the case citations in support here rather than restating them.

## X.    Stuart Wilcox's Reasonable 2024 Hourly Rate For Attorney Work.

170.  Stuart Wilcox has 12 years of experience as of the time this Motion is filed. I have worked closely with Mr. Wilcox in a supervisory relationship for a total of almost 5 years, starting in March 2019. Based on my years of experience working with him, I am well aware that his work is of excellent quality and he has extensive expertise in environmental citizen suit litigation—as is further reflected in his declaration in support of this Motion. I am further aware from talking with colleagues that Mr. Wilcox enjoys a reputation for environmental citizen suit expertise, as reflected in numerous successful citizen suit case outcomes. As his supervisor, I have set Mr. Wilcox's hourly rate at $825 per hour as an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of his level of skill, years of experience, and reputation for environmental law expertise. This rate is commensurate with, even lower than, rates found reasonable in Central District of California attorneys' fee award decisions for attorneys with his level of skill, experience, and reputation working on cases involving complex civil litigation. In evaluating his hourly rate, I have reviewed market data and attorney fee awards in cases decided over the past several years

involving various types of complex civil litigation in the U.S. District Court for the Central District of California, which are described below.

171.  In the chart below, I have set forth the rates that the Court found reasonable in the representative Central District of California cases that I have relied on as support for Mr. Wilcox's hourly rate and then what those rates would be as an inflation-adjusted 2024 attorney fee rate (as discussed above, I have utilized a very conservative 3% per year inflation value that likely underestimates actual attorney fee inflation over the relevant period). The average of these historical rates is $818.29 per hour, before correcting for inflation. Utilizing a 3% per year inflation adjustment, the average of the attorney hourly rates from the cases below is $906.29 per hour. Mr. Wilcox's rate of $825 per hour is nearly the same as the unadjusted figure ($6.71 above) and is over $80.00 below the conservatively adjusted figure. Notably, his rate is also far below many of the rates for these comparably experienced attorneys, in one case by as much as $240 and in another by $185 for an attorney with two years less experience, even before correcting these rates for inflation at all. Given the relationship of Mr. Wilcox's rate of $825 per hour to these figures, it is my opinion that his rate represents a reasonable, well supported (even conservative) prevailing market rate in 2024 for an attorney of his experience, skill, and reputation in the Central District of California.

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2024 | Case Citation |
|---|---|---|---|---|
| Rebecca J. Canamero (10 years) | $625.00 | 2020 | $703.44 | *125916 Ont. Ltd. v. Kagan*, No. 20-02630, 2020 U.S. Dist. LEXIS 227111 (C.D. Cal. Nov. 16, 2020) |
| Robert Barton (11 years) | $775.00 | 2020 | $872.27 | *125916 Ont. Ltd. v. Kagan*, No. 20-02630, 2020 U.S. Dist. LEXIS 227111 (C.D. Cal. Nov. 16, 2020) |
| Dylan Price (11 years) | $685.00 | 2019 | $794.10 | *Abbas v. Vertical Entm't, LLC*, No. 18-7399, 2019 U.S. Dist. LEXIS 181056 (C.D. Cal. Oct. 18, 2019) |
| Tagore O. Subramaniam (9 years) | $675.00 | 2020 | $759.72 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Dalia Khalili (13 years) | $775.00 | 2020 | $872.27 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Felicia Gilbert (9 years) | $800.00 | 2020 | $900.41 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |

| | | | | |
|---|---|---|---|---|
| Xinying Valerian (13 years) | $750.00 | 2020 | $844.13 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Felicia Medina (14 years) | $950.00 | 2020 | $1,069.23 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Michael Palmer (15 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Launa Adolph (15 years) | $750.00 | 2018 | $895.54 | *Edwards v. Chartwell Staffing Servs.,* No. 16-9187, 2018 U.S. Dist. LEXIS 234700 (C.D. Cal. Aug. 27, 2018) |
| Matthew W. Gordon (11 years) | $725.00 | 2020 | $815.99 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |
| Eric Brown (12 years) | $825.00 | 2020 | $928.54 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |
| Eric Valenzuela (9 years) | $700.00 | 2022 | $742.63 | *French v. City of L.A.*, No. 20-00416, 2022 U.S. Dist. LEXIS 111194 (C.D. Cal. May 10, 2022) |
| Renee V. Masongsong (10 years) | $600.00 | 2022 | $636.54 | *French v. City of L.A.*, No. 20-00416, 2022 U.S. Dist. LEXIS 111194 (C.D. Cal. May 10, 2022) |

| | | | | |
|---|---|---|---|---|
| John Fattahi (15 years) | $785.00 | 2022 | $832.81 | *French v. City of L.A.*, No. 20-00416, 2022 U.S. Dist. LEXIS 111194 (C.D. Cal. May 10, 2022) |
| Amanda Farfel (10 years) | $950.00 | 2022 | $1,007.86 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Robert Prongay (9 years) | $750.00 | 2019 | $869.46 | *Jiangchen v. Rentech, Inc.,* No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Marshall P. Dees (13 years) | $675.00 | 2019 | $782.51 | *Jiangchen v. Rentech, Inc.,* No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Rachel E. Kaufman (10 years) | $730.00 | 2021 | $797.69 | *Judson v. Goldco Direct, LLC*, No. 19-6798, 2021 U.S. Dist. LEXIS 258173 (C.D. Cal. June 11, 2021) |
| Avi R. Kaufman (11 years) | $800.00 | 2021 | $874.18 | *Judson v. Goldco Direct, LLC*, No. 19-6798, 2021 U.S. Dist. LEXIS 258173 (C.D. Cal. June 11, 2021) |
| Stefan Coleman (13 years) | $730.00 | 2021 | $797.69 | *Judson v. Goldco Direct, LLC*, No. 19-6798, 2021 U.S. Dist. LEXIS 258173 (C.D. Cal. June 11, 2021) |
| Nathan Piller (9 years) | $850.00 | 2023 | $875.50 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |

| Leslie Joyner (10 years) | $800.00 | 2019 | $927.42 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Leslie Joyner (11 years) | $830.00 | 2020 | $934.17 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Leslie Joyner (12 years) | $830.00 | 2021 | $906.96 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Stuart Wilcox (10 years) | $675.00 | 2022 | $716.11 | *Los Angeles Waterkeeper v. American Reclamation, et al.,* No. 21-1140 (C.D. Cal. April 15, 2022) |
| Edward Moss (14 years) | $975.00 | 2018 | $1,164.20 | *McAllister v. St. Louis Rams, LLC,* No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Edward Moss (13 years) | $925.00 | 2017 | $1,137.63 | *McAllister v. St. Louis Rams, LLC,* No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Andrew Soukup (12 years) | $935.00 | 2020 | $1,052.35 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |

| | | | | |
|---|---|---|---|---|
| Andrew Soukup (13 years) | $975.00 | 2021 | $1,065.41 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Ryan Weinstein (15 years) | $875.00 | 2020 | $984.82 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Christopher Chatham (9 years) | $900.00 | 2022 | $954.81 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Christopher Chatham (10 years) | $1,010.00 | 2023 | $1,040.30 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Nathaniel Bach (14 years) | $950.00 | 2022 | $1,007.86 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Sarah Moses (14 years) | $855.00 | 2022 | $907.07 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |

| Nathaniel Bach (15 years) | $1,065.00 | 2023 | $1,096.95 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Sarah Moses (15 years) | $1,000.00 | 2023 | $1,030.00 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Jackson Wagener (13 years) | $740.00 | 2018 | $883.60 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |

172.  The 13 additional data points in the chart below further support the reasonableness of Mr. Wilcox's rate of $825 per hour. The attorneys in these cases had between 4 and 9 years less experience than Mr. Wilcox, meaning in at least one case the attorney had only 25% of Mr. Wilcox's years of experience, and the Courts found that rates exceeding his rate of $825 per hour were reasonable for those attorneys, after conservatively correcting for inflation. Indeed, the Courts found rates exceeding Mr. Wilcox's rate, even without correcting for inflation at all, reasonable for attorneys with as many as 7 years less experience (*i.e.* less than half as much experience).

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2024 | Case Citation |
|---|---|---|---|---|
| John A. Canale (8 years) | $750.00 | 2020 | $844.13 | *125916 Ont. Ltd. v. Kagan*, No. 20-02630, 2020 U.S. Dist. LEXIS 227111 (C.D. Cal. Nov. 16, 2020) |
| Yungmoon Chang (5 years) | $876.00 | 2021 | $957.23 | *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) |
| Danielle Fuschetti (7 years) | $750.00 | 2020 | $844.13 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Russell Kornblith (7 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Nathan Piller (8 years) | $850.00 | 2022 | $901.77 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Stephanie Drotar (3 years) | $770.00 | 2018 | $919.42 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |

| Nora Kahn (4 years) | $720.00 | 2018 | $859.72 | *McAllister v. St. Louis Rams, LLC,* No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
|---|---|---|---|---|
| Matthew Murphy (8 years) | $875.00 | 2018 | $1,044.80 | *McAllister v. St. Louis Rams, LLC,* No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Kathryn Hutchinson (7 years) | $702.00 | 2018 | $838.22 | *WB Music Corp. v. Royce Int'l Broad. Corp.,* No. 16-600, 2018 U.S. Dist. LEXIS 227743 (C.D. Cal. July 9, 2018) |
| Kathryn W. Hutchinson (7 years) | $702.00 | 2018 | $838.22 | *WB Music Corp. v. Royce Int'l Broad. Corp.,* No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Angela Poon (8 years) | $775.00 | 2021 | $846.86 | *Woodhouse v. United States Gov't,* No. 21-06372, 2021 U.S. Dist. LEXIS 249920 (C.D. Cal. Dec. 31, 2021) |
| Joseph C. Hansen (8 years) | $795.00 | 2021 | $868.72 | *Woodhouse v. United States Gov't,* No. 21-06372, 2021 U.S. Dist. LEXIS 249920 (C.D. Cal. Dec. 31, 2021) |
| Matthew Murphy (7 years) | $810.00 | 2017 | $996.20 | *McAllister v. St. Louis Rams, LLC,* No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |

**XI.    Marla Fox's Reasonable 2024 Hourly Rate For Attorney Work.**

173.  Marla Fox has 12 years of experience as of the time this Motion is filed, the same amount of experience as Mr. Wilcox, discussed above. I have worked closely with Ms. Fox in a supervisory relationship for about a year and a half. Based on my experience working with her, I am well aware that her work is of excellent quality and she has extensive expertise in environmental citizen suit litigation—as is further reflected in her declaration in support of this Motion. I am further aware from talking with colleagues that Ms. Fox enjoys a reputation for environmental citizen suit expertise, as reflected in numerous successful citizen suit case outcomes. As her supervisor, I have set Ms. Fox's hourly rate at $825 per hour as an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of her level of skill, years of experience, and reputation for environmental law expertise. As with Mr. Wilcox, who has the same amount of experience, it is my opinion that Ms. Fox's hourly rate of $825 per hour is an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of her level of skill, years of experience, and reputation for environmental law expertise. As discussed above with regard to Mr. Wilcox, this rate is commensurate with, even lower than, rates found reasonable in Central District of California attorneys' fee award decisions for attorneys with her level of skill, experience, and reputation working on cases involving complex civil litigation. In evaluating this hourly rate, I have reviewed the same market data and attorney fee awards in cases decided over the past several years involving various types of complex civil litigation in the U.S. District Court for the Central District of California that I reviewed in setting Mr. Wilcox's rate. These data points provide the same support for Ms. Fox's rate as they do for Mr. Wilcox's rate, and I incorporate that analysis and the case citations in support here rather than restating them.

**XII.   Christopher Hudak's Reasonable 2024 Hourly Rate For Attorney Work.**

174.  Christopher Hudak has 12 years of experience as of the time this Motion is filed, the same amount of experience as Mr. Wilcox and Ms. Fox, discussed above. I have worked closely with Mr. Hudak as co-counsel on numerous matters for over a decade. Based on my years of experience working with him, I am well aware that his work is of excellent quality and he has extensive expertise in environmental citizen suit litigation—as is further reflected in his declaration in support of this Motion. I am further aware from talking with colleagues that Mr. Hudak enjoys a reputation for environmental citizen suit expertise, as reflected in numerous successful citizen suit case outcomes. I am aware that Aqua Terra Aeris Law Group has set his 2024 rate for the Los Angeles/Orange County area legal market at $825 per hour. As with Mr. Wilcox and Ms. Fox, who have the same amount of experience, it is my opinion that Mr. Hudak's hourly rate of $825 per hour is an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of his level of skill, years of experience, and reputation for environmental law expertise. As discussed above with regard to Mr. Wilcox and Ms. Fox, this rate is commensurate with, even lower than, rates found reasonable in Central District of California attorneys' fee award decisions for attorneys with his level of skill, experience, and reputation working on cases involving complex civil litigation. In evaluating these hourly rates, I have reviewed the same market data and attorney fee awards in cases decided over the past several years involving various types of complex civil litigation in the Central District of California that I reviewed in setting Mr. Wilcox's and Ms. Fox's rates. These data points provide the same support for Mr. Hudak's rate as they do for Mr. Wilcox's and Ms. Fox's rates, and I incorporate that analysis and the case citations in support here rather than restating them.

**XIII.  Austin Sutta's Reasonable 2024 Hourly Rate For Attorney Work.**

175.  Austin Sutta has 10 years of experience as of the time this Motion is filed. I have worked closely with Ms. Sutta on several matters over the last few years. Based on my years of experience working with her, I am well aware that her work is of excellent quality and she has extensive expertise in environmental citizen suit litigation—as is further reflected in her declaration in support of this Motion. I am further aware from talking with colleagues that Ms. Sutta enjoys a reputation for environmental citizen suit expertise, as reflected in numerous successful citizen suit case outcomes. I am aware that Aqua Terra Aeris Law Group has set Ms. Sutta's 2024 hourly rate for the Los Angeles/Orange County area legal market at $755 per hour. It is my opinion that Ms. Sutta's hourly rate of $755 per hour is an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of her level of skill, years of experience, and reputation for environmental law expertise. This rate is commensurate with, even lower than, rates found reasonable in Central District of California attorneys' fee award decisions for attorneys with her level of skill, experience, and reputation working on cases involving complex civil litigation. In evaluating her hourly rate, I have reviewed market data and attorney fee awards in cases decided over the past several years involving various types of complex civil litigation in the U.S. District Court for the Central District of California, which are described below.

176.  In the chart below, I have set forth the rates that the Court found reasonable in the representative Central District of California cases that support the reasonableness of Ms. Sutta's hourly rate and then what those rates would be as an inflation-adjusted 2024 attorney fee rate (as discussed above, I have utilized a very conservative 3% per year inflation value that likely underestimates actual attorney fee inflation over the relevant period). The average of these historical rates is $776.43 per hour, before correcting for inflation. Utilizing a 3% per year inflation adjustment, the average of the attorney hourly rates from the cases below

is $858.45 per hour. The unadjusted figure is $21.43 over Ms. Sutta's $755 per hour rate, the conservatively adjusted figure is $103.45 over Ms. Sutta's rate, and Ms. Sutta's rate is far less than many of the rates below. Given the relationship of Ms. Sutta's rate to this data, it is my opinion that her $755 per hour rate is reasonable, even conservative, as a prevailing market rate in 2024 for an attorney of her experience, skill, and reputation in the Central District of California.

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2024 | Case Citation |
|---|---|---|---|---|
| John A. Canale (8 years) | $750.00 | 2020 | $844.13 | *125916 Ont. Ltd. v. Kagan*, No. 20-02630, 2020 U.S. Dist. LEXIS 227111 (C.D. Cal. Nov. 16, 2020) |
| Rebecca J. Canamero (10 years) | $625.00 | 2020 | $703.44 | *125916 Ont. Ltd. v. Kagan*, No. 20-02630, 2020 U.S. Dist. LEXIS 227111 (C.D. Cal. Nov. 16, 2020) |
| Robert Barton (11 years) | $775.00 | 2020 | $872.27 | *125916 Ont. Ltd. v. Kagan*, No. 20-02630, 2020 U.S. Dist. LEXIS 227111 (C.D. Cal. Nov. 16, 2020) |
| Dylan Price (11 years) | $685.00 | 2019 | $794.10 | *Abbas v. Vertical Entm't, LLC*, No. 18-7399, 2019 U.S. Dist. LEXIS 181056 (C.D. Cal. Oct. 18, 2019) |
| Dan Bass (8 years) | $625.00 | 2020 | $703.44 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |

| | | | | |
|---|---|---|---|---|
| Tagore O. Subramaniam (9 years) | $675.00 | 2020 | $759.72 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Felicia Gilbert (9 years) | $800.00 | 2020 | $900.41 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Kayvon Sabourian (8 years) | $600.00 | 2018 | $716.43 | *Edwards v. Chartwell Staffing Servs.*, No. 16-9187, 2018 U.S. Dist. LEXIS 234700 (C.D. Cal. Aug. 27, 2018) |
| Eric Brown (12 years) | $825.00 | 2020 | $928.54 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |
| Matthew W. Gordon (11 years) | $725.00 | 2020 | $815.99 | *Fan v. Delta Air Lines*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |
| Eric Valenzuela (9 years) | $700.00 | 2022 | $742.63 | *French v. City of L.A.*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |
| Renee V. Masongsong (10 years) | $600.00 | 2022 | $636.54 | *French v. City of L.A.*, No. 19-04599, 2020 U.S. Dist. LEXIS 157480 (C.D. Cal. May 20, 2020) |

| | | | | |
|---|---|---|---|---|
| Amanda Farfel (10 years) | $950.00 | 2022 | $1,007.86 | *Hope Med. Enters. v. Fagrgon Compounding Serv., LLC*, No. 19-07748, 2022 U.S. Dist. LEXIS 49151 (C.D. Cal. Mar. 14, 2022) |
| Robert Prongay (9 years) | $750.00 | 2019 | $869.46 | *Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Avi R. Kaufman (11 years) | $800.00 | 2021 | $874.18 | *Judson v. Goldco Direct*, LLC, No. 19-6798, 2021 U.S. Dist. LEXIS 258173 (C.D. Cal. June 11, 2021) |
| Rachel E. Kaufman (10 years) | $730.00 | 2021 | $797.69 | *Judson v. Goldco Direct*, LLC, No. 19-6798, 2021 U.S. Dist. LEXIS 258173 (C.D. Cal. June 11, 2021) |
| Leslie Joyner (10 years) | $800.00 | 2019 | $927.42 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Leslie Joyner (11 years) | $830.00 | 2020 | $934.17 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Leslie Joyner (12 years) | $830.00 | 2021 | $906.96 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |

| Nathan Piller (8 years) | $850.00 | 2022 | $901.77 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Nathan Piller (9 years) | $850.00 | 2023 | $875.50 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Stuart Wilcox (10 years) | $675.00 | 2022 | $716.11 | *Los Angeles Waterkeeper v. American Reclamation, et al.*, No. 21-1140, Dkt. 45 (C.D. Cal. April 15, 2022) |
| Matthew Murphy (8 years) | $875.00 | 2018 | $1,044.80 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Andrew Soukup (12 years) | $935.00 | 2020 | $1,052.35 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Christopher Chatham (9 years) | $900.00 | 2022 | $954.81 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Christopher Chatham (10 years) | $1,010.00 | 2023 | $1,040.30 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |

| | | | | |
|---|---|---|---|---|
| Angela Poon (8 years) | $775.00 | 2021 | $846.86 | *Woodhouse v. United States Gov't*, No. 21-06372, 2021 U.S. Dist. LEXIS 249920 (C.D. Cal. Dec. 31, 2021) |
| Joseph C. Hansen (8 years) | $795.00 | 2021 | $868.72 | *Woodhouse v. United States Gov't*, No. 21-06372, 2021 U.S. Dist. LEXIS 249920 (C.D. Cal. Dec. 31, 2021) |

177.  The 22 additional data points in the chart below further support the reasonableness of Ms. Sutta's rate of $755 per hour. The attorneys in these cases had between 3 and 8 years less experience than Ms. Sutta, and the Courts found that rates exceeding her rate of $755 per hour were reasonable for those attorneys, after conservatively correcting for inflation. Indeed, the Courts found rates exceeding Ms. Sutta's rate, even without correcting for inflation at all, reasonable for attorneys with as many as 7 years less experience.

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2024 | Case Citation |
|---|---|---|---|---|
| Yungmoon Chang (5 years) | $876.00 | 2021 | $957.23 | *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) |
| Danielle Fuschetti (7 years) | $750.00 | 2020 | $844.13 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Russell Kornblith (7 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Evan Woolley (7 years) | $710.00 | 2019 | $823.08 | *Homegoods, Inc. v. Papanicolaou,* No. 19-06912, 2019 U.S. Dist. LEXIS 221967 (C.D. Cal. Dec. 4, 2022) |
| Yuri Chornobil (2 years) | $685.00 | 2020 | $770.97 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |

| Yuri Chornobil (4 years) | $725.00 | 2022 | $769.15 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Sarah McCracken (4 years) | $690.00 | 2020 | $776.60 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Nathan Piller (5 years) | $680.00 | 2019 | $788.31 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Nathan Piller (6 years) | $725.00 | 2020 | $815.99 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Sarah McCracken (6 years) | $775.00 | 2022 | $822.20 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Nathan Piller (7 years) | $725.00 | 2021 | $792.23 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Sarah McCracken (7 years) | $775.00 | 2023 | $798.25 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Stephanie Drotar (3 years) | $770.00 | 2018 | $919.42 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Nora Kahn (4 years) | $720.00 | 2018 | $859.72 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |

| Matthew Murphy (7 years) | $810.00 | 2017 | $996.20 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
|---|---|---|---|---|
| Steven Winkelman (5 years) | $715.00 | 2020 | $804.74 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Alejandro Castro (5 years) | $760.00 | 2022 | $806.28 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Kathryn Hutchinson (7 years) | $702.00 | 2018 | $838.22 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2018 U.S. Dist. LEXIS 227743 (C.D. Cal. July 9, 2018) |
| Kathryn W. Hutchinson (6 years) | $625.50 | 2017 | $769.29 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Amie Medley (7 years) | $607.50 | 2016 | $769.56 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Kathryn W. Hutchinson (7 years) | $702.00 | 2018 | $838.22 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |

| Laura Watson (4 years) | $706.50 | 2021 | $772.01 | *Wb Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2021 U.S. Dist. LEXIS 193603 (C.D. Cal. May 7, 2021) |
|---|---|---|---|---|

1

**XIV.  J. Thomas Brett's Reasonable 2024 Hourly Rate for Attorney Work.**

2       178.  J. Thomas Brett has 7 years of experience as of the time this Motion is

3  filed. I have worked closely with Mr. Brett on several matters over the last few

4  years. Based on my years of experience working with him, I am well aware that

5  his work is of excellent quality and he has extensive expertise in environmental

6  citizen suit litigation—as is further reflected in his declaration in support of this

7  Motion. I am further aware from talking with colleagues that Mr. Brett enjoys a

8  reputation for environmental citizen suit expertise, as reflected in numerous

9  successful citizen suit case outcomes. I am aware that Aqua Terra Aeris Law

10  Group has set Mr. Brett's 2024 hourly rate for the Los Angeles/Orange County

11  area legal market at $660 per hour. It is my opinion that Mr. Brett's hourly rate of

12  $660 per hour is an appropriate 2024 rate to claim in the Los Angeles/Orange

13  County area legal market for an attorney of his level of skill, years of experience,

14  and reputation for environmental law expertise. This rate is commensurate with,

15  even lower than, rates found reasonable in Central District of California attorneys'

16  fee award decisions for attorneys with his level of skill, experience, and reputation

17  working on cases involving complex civil litigation. In evaluating his hourly rate,

18  I have reviewed market data and attorney fee awards in cases decided over the

19  past several years involving various types of complex civil litigation in the U.S.

20  District Court for the Central District of California, which are described below.

21       179.  In the chart below, I have set forth the rates that the Court found

22  reasonable in the representative Central District of California cases that support

23  the reasonableness of Mr. Brett's hourly rate and then what those rates would be

24  as an inflation-adjusted 2024 attorney fee rate (as discussed above, I have utilized

25  a very conservative 3% per year inflation value that likely underestimates actual

26  attorney fee inflation over the relevant period). The average of these historical

27  rates is $705.80 per hour, before correcting for inflation. Utilizing a 3% per year

28  inflation adjustment, the average of the attorney hourly rates from the cases below

is $799.66 per hour. Mr. Brett's $660 per hour rate is over $45 below the unadjusted figure and is $139.66 below the adjusted figure. Given the relationship of Mr. Brett's rate to this data, it is my opinion that his $660 per hour rate is reasonable, even low, as a prevailing market rate in 2024 for an attorney of his experience, skill, and reputation in the Central District of California.

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2023 | Case Citation |
|---|---|---|---|---|
| John A. Canale (8 years) | $750.00 | 2020 | $844.13 | *125916 Ont. Ltd. v. Kagan*, No. 20-02630, 2020 U.S. Dist. LEXIS 227111 (C.D. Cal. Nov. 16, 2020) |
| Romeao Jennings (7 years) | $580.00 | 2018 | $692.55 | *3M Co. v. Phx. Auto. Refinishing Co.,* No. 17-00649, 2018 U.S. Dist. LEXIS 70589 (C.D. Cal. Apr. 25, 2018) |
| Cristina Salvato (6 years) | $615.00 | 2019 | $712.95 | *Abbas v. Vertical Entm't, LLC*, No. 18-7399, 2019 U.S. Dist. LEXIS 181056 (C.D. Cal. Oct. 18, 2019) |
| Yungmoon Chang (5 years) | 876 | 2021 | $957.23 | *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) |
| Dan Bass (8 years) | $625.00 | 2020 | $703.44 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |

| | | | | |
|---|---|---|---|---|
| Tagore O. Subramaniam (9 years) | $675.00 | 2020 | $759.72 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Russell Kornblith (7 years) | $850.00 | 2020 | $956.68 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Kevin Hubbard (8 years) | $500.00 | 2020 | $562.75 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Felicia Gilbert (9 years) | $800.00 | 2020 | $900.41 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Danielle Fuschetti (7 years) | $750.00 | 2020 | $844.13 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Daniel Bass (6 years) | $525.00 | 2018 | $626.88 | *Edwards v. Chartwell Staffing Servs.*, No. 16-9187, 2018 U.S. Dist. LEXIS 234700 (C.D. Cal. Aug. 27, 2018) |
| Tagore Subramaniam (7 years) | $575.00 | 2018 | $686.58 | *Edwards v. Chartwell Staffing Servs.*, No. 16-9187, 2018 U.S. Dist. LEXIS 234700 (C.D. Cal. Aug. 27, 2018) |

| Kayvon Sabourian (8 years) | $600.00 | 2018 | $716.43 | *Edwards v. Chartwell Staffing Servs.*, No. 16-9187, 2018 U.S. Dist. LEXIS 234700 (C.D. Cal. Aug. 27, 2018) |
| Eric Valenzuela (9 years) | $700.00 | 2022 | $742.63 | *French v. City of L.A.*, No. 20-00416, 2022 U.S. Dist. LEXIS 111194 (C.D. Cal. May 10, 2022) |
| Evan Woolley (7 years) | $710.00 | 2019 | $823.08 | *Homegoods, Inc. v. Papanicolaou*, No. 19-06912, 2019 U.S. Dist. LEXIS 221967 (C.D. Cal. Dec. 4, 2019 |
| Lauren Timmons (5 years) | 630 | 2019 | $730.34 | *Homegoods, Inc. v. Papanicolaou*, No. 19-06912, 2019 U.S. Dist. LEXIS 221967 (C.D. Cal. Dec. 4, 2019) |
| Melissa Wright (7 years) | $525.00 | 2019 | $608.62 | *Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Robert Prongay (9 years) | $750.00 | 2019 | $869.46 | *Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Nathan Piller (6 years) | $725.00 | 2020 | $815.99 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |

| | | | | |
|---|---|---|---|---|
| Sarah McCracken (6 years) | $775.00 | 2022 | $822.20 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Nathan Piller (7 years) | $725.00 | 2021 | $792.23 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Sarah McCracken (7 years) | $775.00 | 2023 | $798.25 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Nathan Piller (8 years) | $850.00 | 2022 | $901.77 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Nathan Piller (9 years) | $850.00 | 2023 | $875.50 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Nathan Piller (5 years) | 680 | 2019 | $788.31 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Sarah McCracken (5 years) | 690 | 2021 | $753.98 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Yuri Chornobil (5 years) | 725 | 2023 | $746.75 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |

| | | | | |
|---|---|---|---|---|
| Matthew Murphy (8 years) | $875.00 | 2018 | $1,044.80 | *McAllister v. St. Louis Rams, LLC,* No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Matthew Murphy (7 years) | 2017 | $810.00 | $996.20 | *McAllister v. St. Louis Rams, LLC,* No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Steven Winkelman (5 years) | 715 | 2020 | $804.74 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Christopher Chatham (9 years) | $900.00 | 2022 | $954.81 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Alejandro Castro (5 years) | 760 | 2022 | $806.28 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Kathryn Hutchinson (7 years) | $702.00 | 2018 | $838.22 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2018 U.S. Dist. LEXIS 227743 (C.D. Cal. July 9, 2018) |

| | | | | |
|---|---|---|---|---|
| Kathryn Hutchinson (6 years) | 2017 | $567.00 | $697.34 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2018 U.S. Dist. LEXIS 227743 (C.D. Cal. July 9, 2018) |
| Kathryn W. Hutchinson (6 years) | $625.50 | 2017 | $769.29 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Kathryn W. Hutchinson (7 years) | $702.00 | 2018 | $838.22 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Amie Medley (7 years) | $607.50 | 2016 | $769.56 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Kathryn W. Hutchinson (5 years) | 567 | 2016 | $718.26 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Angela Poon (8 years) | $775.00 | 2021 | $846.86 | *Woodhouse v. United States Gov't*, No. 21-06372, 2021 U.S. Dist. LEXIS 249920 (C.D. Cal. Dec. 31, 2021) |

| Joseph C. Hansen (8 years) | $795.00 | 2021 | $868.72 | *Woodhouse v. United States Gov't*, No. 21-06372, 2021 U.S. Dist. LEXIS 249920 (C.D. Cal. Dec. 31, 2021) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

180.  The 15 additional data points in the chart below further support the reasonableness of Mr. Brett's rate of $660 per hour. The attorneys in these cases had between 3 and 5 years less experience than Mr. Brett, and the Courts found that rates exceeding his rate of $660 per hour were reasonable for those attorneys, after conservatively correcting for inflation. Indeed, the Courts found rates exceeding Mr. Brett's rate, even without correcting for inflation at all, reasonable for attorneys with as many as 5 years less experience.

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2023 | Case Citation |
|---|---|---|---|---|
| Yungmoon Chang (2 years) | $554.00 | 2018 | $661.50 | *Aecom Energy & Constr. v. Ripley,* No. 17-5398, 2018 U.S. Dist. LEXIS 173810 (C.D. Cal. Oct. 9, 2018) |
| Maria Beltran (2 years) | $656.00 | 2021 | $716.83 | *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) |
| Yuri Chornobil (2 years) | $685.00 | 2020 | $770.97 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Yuri Chornobil (3 years) | $685.00 | 2021 | $748.52 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Yuri Chornobil (4 years) | $725.00 | 2022 | $769.15 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |

| Sarah McCracken (4 years) | $690.00 | 2020 | $776.60 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
|---|---|---|---|---|
| Nora Kahn (3 years) | $610.00 | 2017 | $750.22 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Stephanie Drotar (3 years) | $770.00 | 2018 | $919.42 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Nora Kahn (4 years) | $720.00 | 2018 | $859.72 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Daniel Rios (2 years) | $600.00 | 2020 | $675.31 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Daniel Rios (3 years) | $675.00 | 2021 | $737.59 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Andrea Gonzalez (3 years) | $655.00 | 2023 | $674.65 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |

| Cassandra E. Havens (3 years) | $607.50 | 2020 | $683.75 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Laura Watson (3 years) | $607.50 | 2020 | $683.75 | *Wb Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2021 U.S. Dist. LEXIS 193603 (C.D. Cal. May 7, 2021) |
| Laura Watson (4 years) | $706.50 | 2021 | $772.01 | *Wb Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2021 U.S. Dist. LEXIS 193603 (C.D. Cal. May 7, 2021) |

**XV.   Harrison Beck's Reasonable 2024 Hourly Rate For Attorney Work.**

181.  Harrison Beck has three years of experience as of the time this Motion is filed. I have worked with Mr. Beck to some extent on this matter and have found his knowledge and work to be commensurate with attorneys of his experience level. I am aware that Aqua Terra Aeris Law Group has set Mr. Beck's 2024 hourly rate for the Los Angeles/Orange County area legal market at $525 per hour. It is my opinion that Mr. Beck's hourly rate of $525 per hour is an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of his skill and experience. This rate is commensurate with, even lower than, rates found reasonable in Central District of California attorneys' fee award decisions for attorneys with his level of skill and experience working on cases involving complex civil litigation. In evaluating his hourly rate, I have reviewed market data and attorney fee awards in cases decided over the past several years involving various types of complex civil litigation in the U.S. District Court for the Central District of California, which are described below.

182.  In the chart below, I have set forth the rates that the Court found reasonable in the representative Central District of California cases that support the reasonableness of Mr. Beck's hourly rate and then what those rates would be as an inflation-adjusted 2024 attorney fee rate (as discussed above, I have utilized a very conservative 3% per year inflation value that likely underestimates actual attorney fee inflation over the relevant period). The average of these historical rates is $589.67 per hour, before correcting for inflation. Utilizing a conservative 3% per year inflation adjustment, the average of the attorney hourly rates from the cases below is $663.83 per hour. Mr. Beck's rate of $525 per hour is nearly $65 below the uncorrected average and is nearly $140 below the average corrected for inflation. As a result, his rate is not only reasonable, it is in my opinion less than the prevailing market rate in 2024 for an attorney of his experience and skill in the Central District of California.

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2023 | Case Citation |
|---|---|---|---|---|
| Yungmoon Change (2 years) | $554.00 | 2018 | $661.50 | *Aecom Energy & Constr. v. Ripley*, No. 17-5398, 2018 U.S. Dist. LEXIS 173810 (C.D. Cal. Oct. 9, 2018) |
| Maria Beltran (2 years) | $656.00 | 2021 | $716.83 | *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) |
| Sydney Adams (2 years) | $525.00 | 2020 | $590.89 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Julia Z. Wells (3 years) | $525.00 | 2020 | $590.89 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Irina Kirnasova (4 years) | $525.00 | 2020 | $590.89 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Alok Nadig (3 years) | $500.00 | 2020 | $562.75 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |

| | | | | |
|---|---|---|---|---|
| Christopher Yandel (3 years) | $400.00 | 2020 | $450.20 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Emily Linehan (3 years) | $450.00 | 2020 | $506.48 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Irina Kirnosova (2 years) | $475.00 | 2018 | $567.17 | *Edwards v. Chartwell Staffing Servs.*, No. 16-9187, 2018 U.S. Dist. LEXIS 234700 (C.D. Cal. Aug. 27, 2018) |
| Alexandria P. Rankin (3 years) | $375.00 | 2019 | $434.73 | *Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Yuri Chornobil (2 years) | $685.00 | 2020 | $770.97 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Yuri Chornobil (3 years) | $685.00 | 2021 | $748.52 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Sarah McCracken (4 years) | $690.00 | 2020 | $776.60 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Yuri Chornobil (4 years) | $725.00 | 2022 | $769.15 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |

| | | | | |
|---|---|---|---|---|
| Stephanie Drotar (3 years) | $770.00 | 2018 | $919.42 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Nora Kahn (4 years) | $720.00 | 2018 | $859.72 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Daniel Rios (2 years) | $600.00 | 2020 | $675.31 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Daniel Rios (3 years) | $675.00 | 2021 | $737.59 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Andrea Gonzalez (2 years) | $620.00 | 2022 | $657.76 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Andrea Gonzalez (3 years) | $655.00 | 2023 | $674.65 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Rachel S. Shen (2 years) | $495.00 | 2018 | $591.06 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |

| | | | | |
|---|---|---|---|---|
| Cassandra E. Havens (2 years) | $508.50 | 2019 | $589.49 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Cassandra E. Havens (3 years) | $607.50 | 2020 | $683.75 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Laura Watson (3 years) | $607.50 | 2020 | $683.75 | *Wb Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2021 U.S. Dist. LEXIS 193603 (C.D. Cal. May 7, 2021) |
| Rachel S. Shen (2 years) | $495.00 | 2018 | $591.06 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Nora Kahn (3 years) | $610.00 | 2017 | $750.22 | *McAllister v. St. Louis Rams, LLC*, No. 17-157, 2018 U.S. Dist. LEXIS 227704 (C.D. Cal. July 2, 2018) |
| Laura Watson (4 years) | $706.50 | 2021 | $772.01 | *Wb Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2021 U.S. Dist. LEXIS 193603 (C.D. Cal. May 7, 2021) |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

183.  The 3 additional data points in the chart below further support the reasonableness of Mr. Beck's rate of $525 per hour. The attorneys in these cases had between 2-3 years less experience than Mr. Beck, and the Courts found that rates exceeding his rate of $525 per hour were reasonable for those attorneys, after conservatively correcting for inflation. Indeed, the Courts found rates exceeding Mr. Beck's rate, even without correcting for inflation at all, reasonable for an attorney with 3 years less experience.

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2023 | Case Citation |
|---|---|---|---|---|
| Adrineh Shakelian (0 years) | $550.00 | 2021 | $601.00 | *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) |
| Cassandra E. Havens (1 year) | $440.00 | 2018 | $525.38 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Julia Wells (1 year) | $475.00 | 2018 | $567.17 | *Edwards v. Chartwell Staffing Servs.*, No. 16-9187, 2018 U.S. Dist. LEXIS 234700 (C.D. Cal. Aug. 27, 2018) |

1
2

## XVI.  Kenya Rothstein's Reasonable 2024 Hourly Rate For Attorney Work.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

184.  Kenya Rothstein has 3 years of experience as of the time this Motion is filed, the same amount of experience as Mr. Beck, discussed above. I have worked with Ms. Rothstein to some extent on this matter and have found her knowledge and work to be commensurate with attorneys of her experience level. I am aware that Ms. Rothstein's firm Aqua Terra Aeris Law Group has set her 2024 rate for the Los Angeles/Orange County area legal market at $525 per hour. As with Mr. Beck, who has the same amount of experience, it is my opinion that Ms. Rothstein's hourly rate of $525 per hour is an appropriate 2024 rate to claim in the Los Angeles/Orange County area legal market for an attorney of her level of skill, years of experience, and reputation for environmental law expertise. As discussed above with regard to Mr. Beck, this rate is commensurate with, even lower than, rates found reasonable in Central District of California attorneys' fee award decisions for attorneys with her level of skill, experience, and reputation working on cases involving complex civil litigation. In evaluating these hourly rates, I have reviewed the same market data and attorney fee awards in cases decided over the past several years involving various types of complex civil litigation in the Central District of California that I reviewed in considering Mr. Beck's rate. These data points provide the same support for Ms. Rothstein's rate as they do for Mr. Beck's rate, and I incorporate that analysis and the case citations in support here rather than restating them.

23

## XVII. Theresa Trillo's Reasonable 2024 Hourly Rate For Attorney Work.

24
25
26
27
28

185.  Theresa Trillo has one year of experience as of the time this Motion is filed. I am aware that Aqua Terra Aeris Law Group has set a 2024 rate for Ms. Trillo of $455 per hour as a rate commensurate with prevailing market rates in the Los Angeles/Orange County area legal market. I have worked with Ms. Trillo to some extent on this matter and on a few other matters and have found her

knowledge and work to be commensurate with attorneys of her experience level.
It is my opinion that Ms. Trillo's hourly rate of $455 per hour is an appropriate
2024 rate to claim in the Los Angeles/Orange County area legal market for a
reasonably skilled entry-level attorney working on complex civil litigation. This
rate is commensurate with, even lower than, rates found reasonable in Central
District of California attorneys' fee award decisions for attorneys with her
experience level working on cases involving complex civil litigation. In
evaluating her hourly rate, I have reviewed market data and attorney fee awards in
cases decided over the past several years involving various types of complex civil
litigation in the U.S. District Court for the Central District of California, which
are described below.

186.  In the chart below, I have set forth the rates that the Court found
reasonable in the representative Central District of California cases that support
the reasonableness of Ms. Trillo's hourly rate and then what those rates would be
as an inflation-adjusted 2024 attorney fee rate (as discussed above, I have utilized
a very conservative 3% per year inflation value that likely underestimates actual
attorney fee inflation over the relevant period). The average of these historical
rates is $457.15 per hour, before correcting for inflation. Utilizing a conservative
3% per year inflation adjustment, the average of the attorney hourly rates from the
cases below is $525.03 per hour. Given that Ms. Trillo's $455 per hour rate is
below both of these figures ($2.15 below the unadjusted figure and $70.03 below
the conservatively adjusted figure), her rate is not only reasonable, it is in my
opinion even somewhat less than the prevailing market rate in 2024 for an
attorney of her experience and skill in the Central District of California.
Furthermore, and notably, these figures also include rates awarded to individuals
that were presumably not even lawyers yet. For example, the below chart includes
one law clerk, 2 summer associates, and a legal intern, none of whom were
presumably attorneys yet. Eliminating those data points brings the averages to

$502.08 (not corrected for inflation) and $578.32 (conservatively adjusted for inflation), both of which are even further above Ms. Trillo's $455 per hour 2024 rate.

| Name of Attorney and Years of Experience When Requesting Rate | Hourly Rate Found Reasonable | Year of Rate | Hourly Rate Conservatively Adjusted for Inflation (3% per year) to 2024 | Case Citation |
|---|---|---|---|---|
| Yungmoon Change (2 years) | $554.00 | 2018 | $661.50 | *Aecom Energy & Constr. v. Ripley*, No. 17-5398, 2018 U.S. Dist. LEXIS 173810 (C.D. Cal. Oct. 9, 2018) |
| Adrineh Shakelian (0 years) | $550.00 | 2021 | $601.00 | *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) |
| Maria Beltran (2 years) | $656.00 | 2021 | $716.83 | *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022) |
| Colleen Raspberry (law clerk) (0 years) | $225.00 | 2020 | $253.24 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |
| Sydney Adams (2 years) | $525.00 | 2020 | $590.89 | *Alikhan v. Goodrich Corp.*, No. 17-6756, 2020 U.S. Dist. LEXIS 155169 (C.D. Cal. June 25, 2020) |

| | | | | |
|---|---|---|---|---|
| Ashley Johnson (summer associate) (0 years) | $300.00 | 2020 | $337.65 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Hannah Matsunaga (0 years) | $400.00 | 2020 | $450.20 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Summer Associate (0 years) | $300.00 | 2020 | $337.65 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Isabel Finley (1 year) | $400.00 | 2020 | $450.20 | *Chen v. W. Dig. Corp.*, No. 19-00909, 2021 U.S. Dist. LEXIS 6728 (C.D. Cal. Jan. 5, 2021) |
| Julia Wells (1 year) | $475.00 | 2018 | $567.17 | *Edwards v. Chartwell Staffing Servs.*, No. 16-9187, 2018 U.S. Dist. LEXIS 234700 (C.D. Cal. Aug. 27, 2018) |
| Irina Kirnosova (2 years) | $475.00 | 2018 | $567.17 | *Edwards v. Chartwell Staffing Servs.*, No. 16-9187, 2018 U.S. Dist. LEXIS 234700 (C.D. Cal. Aug. 27, 2018) |
| Marielle Sider (legal intern) (0 years) | $150.00 | 2022 | $159.14 | *French v. City of L.A.*, No. 20-00416, 2022 U.S. Dist. LEXIS 111194 (C.D. Cal. May 10, 2022) |
| Sara Miller (1 year) | $435.00 | 2019 | $504.28 | *Homegoods, Inc. v. Papanicolaou,* No. 19-06912, 2019 U.S. Dist. LEXIS 221967 (C.D. Cal. Dec. 4, 2019) |

| | | | | |
|---|---|---|---|---|
| Luke R. Kennedy (1 year) | $425.00 | 2019 | $492.69 | *Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) |
| Yuri Chornobil (2 years) | $685.00 | 2020 | $770.97 | *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023) |
| Daniel Rios (2 years) | $600.00 | 2020 | $675.31 | *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021) |
| Andrea Gonzalez (2 years) | $620.00 | 2022 | $657.76 | *Tracy Anderson Mind & Body, LLC v. Roup*, No. 22-04735, 2023 U.S. Dist. LEXIS 189055 (C.D. Cal. Sep. 11, 2023) |
| Rachel Shen (2 years) | $495.00 | 2018 | $591.06 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2018 U.S. Dist. LEXIS 227743 (C.D. Cal. July 9, 2018) |
| Rachel S. Shen (1 year) | $400.50 | 2017 | $492.56 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Cassandra E. Havens (1 year) | $440.00 | 2018 | $525.38 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |

| | | | | |
|---|---|---|---|---|
| Rachel S. Shen (2 years) | $495.00 | 2018 | $591.06 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Rachel S. Shen (1 year) | $400.50 | 2017 | $492.56 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |
| Cassandra E. Havens (2 years) | $508.50 | 2019 | $589.49 | *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. 16-600, 2020 U.S. Dist. LEXIS 247679 (C.D. Cal. Nov. 20, 2020) |

## XVIII.    Hourly Rates for Paralegal Work.

187.  I have set the following hourly rates for paralegal work done by attorneys or paralegals for Environmental Advocates in 2024 as reasonable Los Angeles/Orange County area rates:

> $265 for 0-<10 years of experience
>
> $285 for 10-<20 years of experience
>
> $350 for 20+ years of experience

188.  I am aware that Aqua Terra Aeris Law Group have also set similar hourly rates for paralegal work done by attorneys or paralegals in 2024 as reasonable Los Angeles/Orange County area rates.

189.  The above rates are consistent with rates found reasonable for paralegal work in case law in the U.S. District Court for the Central District of California. For example, in *Lim v. Transforce, Inc.*, No. 19-04390, 2023 U.S. Dist. LEXIS 73117 (C.D. Cal. Apr. 17, 2023), the Court found law clerk and paralegal rates ranging from $275-450 per hour reasonable as 2023 rates in the Central District of California. Conservatively corrected for inflation at 3 percent per year to 2024 rates, this is $283.25-463.50. In *Aecom Energy & Constr., Inc. v. Topolewski*, No. 17-5398, 2022 U.S. Dist. LEXIS 84689 (C.D. Cal. May 9, 2022), the Court found junior paralegal rates of $226-251 per hour and a senior paralegal rate of $396 per hour to be reasonable 2021 rates in the Los Angeles/Orange County area market. Conservatively corrected for inflation at 3 percent per year to 2024 rates, this is $246.96-274.27 per hour for junior paralegals and $432.72 per hour for senior paralegals. In *Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) the Court found 2019 Los Angeles/Orange County area market paralegal rates of $290 per hour to be reasonable without consideration of experience level for the paralegals involved, indicating that such rates were not controversial for paralegal work generally. Conservatively corrected for inflation at 3 percent per year to 2024 rates, this is

$336.19 per hour for paralegals of any experience level. In *Relman Colfax Pllc v. Fair Hous. Council of San Fernando Valley*, No. 19-8612, 2021 U.S. Dist. LEXIS 93147 (C.D. Cal. Mar. 16, 2021), the Court found paralegal rates of $311 per hour reasonable in the in the Los Angeles/Orange County area market for 2020. Conservatively corrected for inflation at 3 percent per year to 2024 rates, this is $350.03 per hour for paralegals. These paralegal rates are all consistent with, or even significantly higher than, the paralegal rates that I have set for Environmental Advocates for 2024. Finally, declarations submitted by my co-counsel in another matter from Morrison & Foerster LLP indicate that their 2023 paralegal rates go at least as high as $485 per hour for experienced paralegals, which offers further support for the reasonableness of our much lower paralegal rates in this matter. *See* Exhibit 9 (declaration of Michael Felmar of Morrison & Foerster LLP indicating that his 2023 paralegal rate is $485 per hour as a paralegal with 29 years of experience). In light of the foregoing, in my opinion the paralegal rates requested here are plainly supported by case law as reasonable rates for paralegal work in the Los Angeles/Orange County area market for paralegals engaged in complex federal litigation.

**XIX.  Plaintiffs' Lodestar.**

190.  To successfully litigate this case, Plaintiffs' counsel have through January 17, 2024 devoted over 3,640 hours to litigating this matter. Plaintiffs' counsel have reduced their billable hours by over 578 billable hours to reflect billing judgment and are only seeking to recover for slightly less than 3,062 billable hours, for a total lodestar of $2,511,095.09. Attached as Exhibit 1 is a true and correct spreadsheet that summarizes the claimed attorney lodestars for work performed by Plaintiffs' counsel and paralegals in this case up through and including January 17, 2024.

191.  Attached as Exhibit 2 is a true and correct copy of a spreadsheet that consolidates all of Plaintiffs' attorney and paralegal time records for this case.

Time records for each of the individual attorneys and paralegals who are seeking recovery in this matter are also attached to the series of individual declarations that Plaintiffs are filing along with the Motion.

192.  As also noted in Exhibits 1 and 2, some of Plaintiffs' attorneys spent time performing tasks that would be reasonably charged at a paralegal rate. In addition, Plaintiffs had several paralegals perform certain paralegal tasks. In my experience, it is customary in the California jurisdictions in which I have practiced, including this one, to track paralegal task time separately from attorney time and bill this time at a lower rate. This is the approach, (1) I have applied in several fee petitions I have personally brought in the Central District, Northern District and Eastern District of California (with subsequent court awards approving this approach), (2) the approach applied by my co-counsel in other cases with which I am familiar, and (3) an approach well supported by case law including numerous decisions in the Central District of California.[2] Therefore, I and my co-counsel have applied a different billing rate to this paralegal time. The result is two sets of hours: "attorney time," which includes only those hours for which the attorneys were performing legal services appropriate for an attorney, and "paralegal time," which includes those hours for which the attorneys were performing paralegal tasks. As depicted in Exhibits 1 and 2, I and my co-counsel have multiplied the total "attorney time" by the attorney's hourly rate and the total "paralegal rate" by the reduced rate for paralegals to arrive at the total lodestar for

---

[2] *See, e.g.*, *Hirsch v. Compton Unified Sch. Dist.*, No. CV 12-01269, 2013 U.S. Dist. LEXIS 64556, 2013 WL 1898553, at *3 (C.D. Cal. May 3, 2013) (citing *Missouri v. Jenkins*, 491 U.S. 274, 286-88 (1989)); *Perfect 10, Inc. v. Giganews, Inc.,* No. 11-07098, 2015 U.S. Dist. LEXIS 54063, at **62-63 (C.D. Cal. Mar. 24, 2015); *Intamin, Ltd. v. Magnetar Technologies Corp.*, No. 04-0511, 2009 U.S. Dist. LEXIS 123604, at *3 (C.D. Cal. Dec. 28, 2009); *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012); *Elder v. National Conference of Bar* Examiners, 2011 U.S. Dist LEXIS 102205, at *11.

each attorney. These lodestars are based on the prevailing market rates for attorneys and paralegals in the Central District of California described above.

193.  I and my co-counsel have worked on this matter on contingency, and have had to incur very significant financial risk to our respective law firms, working over 3,600 hours collectively on a matter presenting complex and hotly contested issues involving what constitutes an imminent and substantial endangerment under RCRA. Moreover, the time commitment involved in representing Plaintiffs on a case this complex and involved has necessitated that I and my co-counsel defer taking other matters that would have posed less uncertainty in outcome and volume of time commitment and thus significantly less financial risk. I and my co-counsel have collectively many years of experience in complex federal court civil litigation and many years of experience in environmental law, which, when combined with diligent pursuit of this case, has resulted in a significant win for the environment and our clients.

## XX.   Plaintiffs' Costs.

194.  It is my practice and the practice of Environmental Advocates to bill clients separately for litigation expenses including court filing fees, court courtesy copies, postage and other document delivery charges, deposition transcripts, attorney travel, electronic legal research, expert witness costs, and printing/photocopying, in addition to billing for attorney time.

195.  Based on my interactions with co-counsel and opposing counsel in numerous cases, separate billing for litigation expenses such as court filing fees, court courtesy copies, postage and other document delivery charges, deposition transcripts, attorney travel, electronic legal research, expert witness costs, and printing/photocopying is the prevailing practice in the Los Angeles/Orange County market.

196.  Attached as Exhibit 4 is a true and correct spreadsheet itemizing and summarizing Plaintiffs' case costs in this matter, including case costs incurred by

Environmental Advocates, Aqua Terra Aeris Law Group, Ecological Rights Foundation, and Mr. Evenson through the Ecology Law Center, for which Plaintiffs seek reimbursement.

197.  Attached as Exhibits 5(a), 5(b), 5(c), and 5(d) are true and correct copies of receipts documenting case expenses incurred on behalf of Plaintiffs by Environmental Advocates (Exhibit 5(a)), Aqua Terra Aeris Law Group (Exhibit 5(b)), Ecological Rights Foundation (Exhibit 5(c)), and Mr. Evenson through the Ecology Law Center (Exhibit 5(d)).

## XXI.  My Involvement in *Wishtoyo Found. v. United Water Conservation Dist.*, No. 16-3869 (C.D. Cal.)

198.  I was lead counsel for Plaintiffs in *Wishtoyo Found v. United Water Conservation Dist.*, No. 16-3869 (C.D. Cal.). In the *Wishtoyo* case I wrote or co-authored all of the many briefs and other pleadings filed in the case, conducted or assisted in all of the discovery, and served as lead trial counsel for the 11-day bench trial in that matter, and my participation was necessary to the successful outcome there, as it was in the present case. As one task, I wrote Plaintiffs' motion for attorneys' fees and costs and authored or directed the production of the many documents associated with that motion.

199.  My involvement in the *Wishtoyo* matter is also relevant in that I used a similar methodology as used above in this declaration for the timekeepers in this matter to set the hourly rates claimed here as I did in the *Wishtoyo* matter to provide evidence supporting counsel's rates in the *Wishtoyo* matter. The Court, in approving the rates in the *Wishtoyo* matter, effectively credited this methodology as providing a reasonable manner of supporting counsel's reasonable hourly rates. *See Wishtoyo*, 2019 U.S. Dist. LEXIS 39927, at *25 (finding "Plaintiffs have demonstrated that courts in the Central District have awarded attorneys with comparable experience a similar rate…").

1   200.  In the *Wishtoyo* matter, I sought recovery for time spent by our

2  litigation team for clerical work at a rate of 50% of the plaintiffs' paralegal rates.

3  The Court in that case awarded plaintiffs' recovery of such time at these rates.

4   Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury under the

5  laws of the United States of America that the foregoing is true and correct to the

6  best of my knowledge.

7  Executed in San Francisco, California on January 19, 2024.

8

9

10  Christopher Sproul
    Environmental Advocates